Yazoo & M. V. R. Co. *v.* M. Levy & Sons.*

[106 So. 525. No. 25135.]

(Division B. Dec. 14, 1925.)

1. Courts. *United States supreme court decision as to principles of law governing measure of damages controls in case of interstate shipments.*

Shipments involved in action against carrier for failure to deliver being interstate, the principles of law governing the measure of damages as declared by the United States supreme court control.

2. Carriers. *Basis of recovery for failure to deliver goods in interstate shipment, caused by their loss by carrier or their damage or destruction, stated.*

Basis of recovery for failure to deliver goods in interstate shipment, caused by their loss by carrier or by their damage or destruction, is their value at time and place delivery is made, or, if not made, should have been made, less freight charges.

3. Carriers. *Not enough in action for nondelivery to show value of cotton when burned in carrier's possession.*

It is not enough in action for nondelivery of interstate shipment of cotton to show its value when damaged by fire, but it must be shown when in due course of transportation it would have reached its destination, and what its then market value was there.

4. EVIDENCE. *Staple and grade of cotton destroyed provable by that of other parts of same crop.*

The cotton in question having been burned through defendant's fault, plaintiffs could prove its staple and grade by the best evidence obtainable, the testimony of one of the owners of the plantation on which it was grown, that only a certain variety of cotton was there produced that year, and that, while he had not seen that in question, he had seen other cotton then raised there, and that the staple of all of the crop was from one and three-sixteenth to one and one-fourth inches.

5. EVIDENCE. *Best evidence that on which those concerned rely and act.*

The best evidence touching any given question of fact is that on which those concerned rely and act.

6. EVIDENCE. *Cotton exchange reports best evidence of value.*

Cotton exchange reports are the best evidence of market value of cotton.

7. DAMAGES. *Carrier held to have burden of proof of defense that, under bill of lading, it had benefit of shipper's insurance.*

Carrier sued for goods burned in transit, and setting up that plaintiffs had insurance thereon, and that it was entitled to set off amount thereof under provision of bill of lading which gave it the benefit thereof, provided to do so would not avoid policy, has the burden of proving that it would not avoid the policy.

8. EVIDENCE. *Burden of proof not changed by mispleading unless misleading.*

Burden of proof will not be changed by mispleading unless the adverse party is misled by such mispleading.

*Headnotes 1. Courts, 15 C. J., Section 318; 2. Carriers, 10 C. J., Sections 606, 621; 3. Carriers, 10 C. J., Sections 574, 600; 4. Evidence, 22 C. J., Section 1220; 5. Evidence, 22 C. J., Section 1219; 6. Evidence, 22 C. J., Section 152; 7. Damages, 17 C. J., Section 322; 8. Evidence, 22 C. J., Section 8.

Appeal from circuit court of Leflore county.

Hon. S. F. Davis, Judge.

Action by M. Levy & Sons against the Yazoo & Mississippi Valley Railroad Company. Judgment for plaintiffs, and defendant appeals. Plaintiffs prosecute cross-appeal. Affirmed in part, and reversed in part.

See, also, 106 So. 524; 141 Miss. 196.

*Gardner, Odom & Gardner, Charles N. Burch, H. D. Minor* and *Clinton H. McKay,* for appellant.

*A. A. Armistead,* for appellee.

I. *Levy & Sons failed to make out their case.* The lower court committed reversible error in failing to exclude plaintiff's evidence and direct a verdict for the Railroad Company. There is no competent evidence in the record to show the staple, grade or value of the cotton. Besides, there is a total absence of proof as to when the shipment of cotton should have arrived in New Orleans. Neither is there any evidence in the record as to the value of the cotton in New Orleans, the point of destination. Proof of all of these facts is essential before plaintiffs are entitled to a judgment.

The witness had no personal knowledge as to the staple, grade or value of the cotton and his testimony in this respect was hearsay, and, therefore, incompetent. The question is so elementary that we are content to cite only one authority wherein the rule for testing the competency of such evidence is stated. See 6 Encyc. of Evidence, pages 451 and 452.

But, if we should admit for the sake of argument that Mr. Levy's testimony as to the staple, grade and market value of the cotton were competent, we submit that the proof as to the measure of damages is still insufficient to uphold the verdict. The shipments of cotton being interstate, the measure of damages is a federal question and must be determined by the rules of the common law

as interpreted and applied in federal courts and as modified by federal statute. *Adams Express Co.* v. *Croninger*, 226 U. S. 491; *Southern Express Co.* v. *Byers*, 214 U. S. 612; *Railroad* v. *Davis*, 112 Miss. 119; *Railroad Co.* v. *Eubanks*, 121 Miss. 530; *Railroad Co.* v. *Grocery & Cotton Co.*, 134 Miss. 846; Cummins Amendment to Act to Regulate Commerce, ch. 176, Act March 4, 1915, 38 Stat. L. 1196, Compiled Statutes, sec. 860a, 4 Fed. Stat. Ann. (2 Ed.), page 506; 5 Elliott on Railroads, sec. 2762, page 737; 3 Hutchinson on Carriers (3 Ed.), sec. 1360, page 1610; 3 Sutherland on Damages (3 Ed.), pages 2723 and 2727; 10 C. J. 395; *Barrett* v. *Van Pelt*, Adv. Sheets, U. S. Sup. Ct., May 1, 1925, pages 465 and 469; *Railroad Co.* v. *Grocery & Cotton Co.*, 134 Miss. 896.

Plaintiffs alleged in their declaration that the two lots of cotton were of the value of fifty and sixty-five cents per pound, respectively. The burden of proving this allegation was on the plaintiffs. It was as much incumbent on them to prove their damages as it was to prove liability. This principle of law is well established. 2 Ency. of Evidence, 901; *Barrett* v. *Van Pelt*, Adv. Shts, U. S. Sup. Ct., May 1, 1925, page 465.

Our court will reverse if damages have not been proved and in determining the measure of damages the correct rule must be applied. *Railroad* v. *Langdon*, 71 Miss. 146; *Railroad Co.* v. *Robbins Cotton Co.*, 94 Miss. 351; *Railroad Co.* v. *A. J. Lyons & Co.*, 107 Miss. 777; *Chicago, etc., R. Co.* v. *McCaull-Dinsmore Co.*, 253 U. S. 97.

II. *The Railroad Company was entitled to recoup or offset the amounts collected by M. Levy & Sons from the Insurance Company.* By *Y. & M. V. R. R. Co.* v. *Blum*, 124 Miss. 318, argument on the point under consideration is foreclosed. See, also, *Luckenbach* v. *McCahan Sugar Refining Co.*, 248 U. S. 139; *Phoenix Ins. Co.* v. *Erie & W. Transportation Co.*, 117 U. S. 312; *Wager* v. *Providence Ins. Co.*, 150 U. S. 99; *St. Louis* v. *Commercial Ins. Co.*, 139 Mass. 508; *Mercantile Mut. Ins.*

*Co.* v. *Calebs,* 20 N. Y. 173; *Ross* v. *Philadelphia, W. &
B. R. Co.,* 199 Pa. 378, 10 C. J. 515; Joyce on Insurance
(2 Ed.), secs. 3545 and 3548.

*It cannot be argued that the holding of this court in
the Blum case, supra, does not apply in the case at bar
upon the ground that there was a provision in the in-
surance policy which would have avoided the policy if
the Railroad Company had been allowed to recoup the
amounts of insurance collected, for the reason that there
is not a line of testimony in this record as to the provi-
sions of the insurance policy.*

The general rule as to the burden of proof on issues
raised by pleadings is well settled. 22 C. J. 68; 10 R.
C. L. 898; 2 Ency. of Evidence, 796; *Powers* v. *Russell,*
13 Pick. (Mass.) 69; *Snodgrass* v. *Caldwell, et al.,* 7 So.
834; *Kyle et al.* v. *Calmes,* 1 How. 121; *Winn* v. *Skip-
worth,* 14 S. & M. 14; *Simonton* v. *Winter et al.,* 5 Peters
(U. S.) 148.

III.  *The case was improperly reopened after plain-
tiff's motion for peremptory instruction was denied, but
having reopened the cause, the testimony of J. H. Sam-
uels should have gone to the jury.*

7 Ency. of Evidence, pages 125 and 126.

*A. A. Armistead,* for appellee.

It is contended that this case should be reversed be-
cause the cotton in question was never delivered to Mr.
Levy after being burned; that he never saw the samples
and, therefore, knew nothing about the grade or staple
and for that reason there is no proof of value. But Mr.
Levy introduced the New Orleans Exchange printed re-
ports, and swore they were true and correct in every re-
spect. These reports are competent evidence. *Board of
Levee Commissioners, etc.,* v. *Dillard, etc.,* 76 Miss. at
641, 25 So. 292; *Levee Commissioners, etc.,* v. *Pressley
Nelms et al.,* 82 Miss. 416; *Whitfield* v. *Whitfield,* 40

Miss. 352; 17 Cyc. at pages 108 and 110; and 112, 113, 127 and 425 on "Market Quotations."

In view of the tesimony of the witness, in view of the Mississippi authorities and the general law, we ask the court, where goes the contention of counsel for appellant that there was no value proved in this case? That statement in appellant's brief is wholly without merit. As Judge CALHOUN said in *Levee Commissioners* v. *Nelms*, 82 Miss. 420, it would be curious if one's cotton—substituting the word *cotton* for *land*—should be held without value because the cotton was burned and no witnesses ever saw the samples. This evidence is overwhelming as to the value of the cotton in New Orleans, "*at its destination,*" not at Tchula; there was no evidence to prove the value of the cotton at Tchula. We proved the value of this cotton in New Orleans, "at the point of destination." This case is controlled by *Y. & M. V. R. R. Co.* v. *Craig,* 118 Miss. 299-318, 79 So. 102, and *G. H. & S. A. R. R. Co.* v. *Wallace,* 223 U. S. at 481. See, also, *Spann* v. *A. & V. R. R. Co.,* 113 Miss. 239, 74 So. 141.

With these authorities staring counsel in the face, it is seriously insisted by them that when the plaintiff in the court below, appellee here, introduced the bills of lading and showed that the cotton had never been delivered to them, they were entitled to a directed verdict because the bill of lading provided for the insurance carried by the shipper. Many authorities are cited in appellant's brief that the measure of recovery is the value of the cotton at destination less the freight. We submit that this is not the law. They are entitled to *no freight* until they had transported the goods safely to destination and delivered them to the proper consignee. 6 Cyc. at pages 497 and 527.

A provision of the bill of lading is quoted which said that the carrier should be entitled to any insurance carried by the shipper *in so far as it should not avoid the policy or contracts of insurance.* Very shrewdly, this case was sought to be manouvered in the lower court, so.

as to get before the jury the question of insurance in order that the jury might go off on the idea that because the Insurance Company may have "loaned" M. Levy & Sons the amount of the value of the cotton destroyed, that Levy & Sons lost nothing, and, therefore, the Railroad could take advantage of that in *justification of their own negligence.*

Now the burden of proof being upon the Railroad Company to bring itself within the exception of this bill of lading, the presumption of negligence being against it, as evidenced by the *Wallace case* and the *Craig case, supra,* it undertook to prove by Mr. Wm. L. Lowe, that he was the manager of the Horse Shoe Plantation on which this cotton was grown and from which it was shipped in September and October, 1920, and that one bale of cotton had caught fire at the gin—he didn't know how, but he didn't say whether on the inside or the outside. He declined to say that this cotton was "gin fired."

Now this one bale which the witness declined to say was "gin fired" on September 1, 1920, is the only evidence upon which they predicate the claim in their second plea that the cotton loaned on September 21, 1920, was "gin fired." We say that this contention is absolutely unreasonable and without any merit in the world. This was wholly insufficient to relieve this Railroad Company of the presumption of negligence, and their liability for both shipments and, therefore, we ask a peremptory instruction to find for the plaintiff for both shipments for such sum as plaintiff is entitled to, including interest from the dates of shipment. This instruction was refused by the court, but it operated to bring up for consideration the whole case. See *I. C. R. R. Co.* v. *State,* 94 Miss. 759, 48 So. 561; *Y. & M. V. R. R. Co.* v. *Blum,* 124 Miss. 318, 86 So. 805, and *Luckenbach* v. *McCahan Sugar Refining Co.,* 148 U. S. 139, 1 Am. Law Rep. 1522, 63 L. Ed. 170.

The deposition of Mr. J. B. Samuels was taken by the appellants and nothing was said about it, nor was it offered in evidence. The plaintiffs closed their case,

and then made a motion to reopen the case in order to read the Samuels deposition, after first reading it to the court to show its importance as flatly contradicting the gin fired defense. This the court did, and the deposition was read over the objection of counsel. Depositions taken in a cause and filed with the papers in the case may be read by either party. *Oppenheimer* v. *Telhiard,* 123 Miss. 111, 85 So. 134. See, also, *Hoover* v. *Pierce,* 26 Miss. 627-9; *Natchez, etc., Rd. Co.* v. *Bolls,* 67 Miss. 50; 38 Cyc., page 1360.

As soon as this deposition was read over the protest of counsel for the Railroad Company, Mr. Gardner objected to the reading of the deposition of Mr. Samuels which he himself had taken, and the court permitted the reading of it because it was so vital as to disproving the gin fire defense. This deposition, after the witness had been led along up to the point about whether the fire was from the inside or out, testified that from his experience he would say that the cotton which was turned over to him—both shipments—had been damaged from the *exterior;* that he had handled in his twenty-seven years about seventy-five thousand bales of fire damaged cotton, including loss in one plant of eleven thousand bales, and basing his judgment on this experience. Now this deposition squarely presented an issue of fact on the gin fire plea, which ought not to have been submitted to the jury.

Mr. Gardner then introduced H. W. McCormick. His testimony was objected to as no predicate had been laid, which objection was sustained. Mr. McCormick had already testified that the cotton was burned on the inside and he wanted to contradict Samuels. We submit to the court that this question has long been settled in this state in *J. R. Dunlap* v. *John P. Richardson,* 63 Miss. 447, See, also, Greenleaf's Evidence (2 Ed.), secs. 444-462; Wharton's Evidence, secs. 549-555; *Moore* v. *Chicago, etc., Rd.,* 59 Miss. 243. *Magness* · v. *State,* 106 Miss. 195, 63 So. 353 and authorities cited in this opin-

ion.  See, also, *McCall* v. *State,* 29 So. 1003; *Fulton* v. *Hughes,* 63 Miss. 61; *Jones* v. *State,* 65 Miss. 179, 3 So. 379; *Bonelli* v. *Bowen,* 70 Miss. 142-149.

Therefore, we insist that the court was correct in not allowing the deposition of Samuels to be impeached.

· Argued orally by *H. T. Odom & C. H. McKay,* for appellant, and *A. A. Armistead,* for appellees.

Anderson, J., delivered the opinion of the court.

Appellees, M. Levy & Sons, brought this action in the circuit court of Leflore county against appellant, Y. & M. V. R. R. Co., to recover the sum of twelve thousand seven hundred ninety-three dollars and seventy-five cents, with interest, as damages by fire to forty-four bales of cotton belonging to appellees, alleged to have been suffered by him at the hands of appellant while said cotton was being transported by the latter from Tchula, in this state, to New Orleans, in the state of Louisiana.  There was a verdict and judgment in favor of appellees for seven thousand one hundred ninety-six dollars and ten cents, from which judgment appellant prosecutes an appeal and appellees prosecute a cross-appeal.

Appellees shipped from their plantation in Holmes county, in this state, known as Horseshoe Plantation, to New Orleans, consigned to themselves, two separate lots of cotton, which were destroyed in part by fire while in transit.  Appellees were domiciled in New Orleans; they operated the Horseshoe Plantation near Tchula, in Holmes county.  Tchula is a station on appellant's line of railroad.  On September 21, 1920, appellees, through their manager, delivered to appellant at Tchula thirty-five bales of cotton consigned to themselves at New Orleans, and obtained therefor the usual bill of lading.  Twenty bales of this shipment were damaged by fire after having been loaded on appellant's cars at Tchula for shipment.  On October 18, 1920, appellees delivered to appellant forty-six bales of cotton at Tchula

from their plantation for shipment to New Orleans, consigned to themselves, and received therefor two bills of lading, one for thirty bales of cotton and the other for sixteen bales. After being loaded on appellant's cars at Tchula, twenty-four bales of this cotton were damaged by fire. Forty-three bales were carried to New Orleans by appellant, and, after having been reconditioned in Kahn's Pickery, were tendered to appellees, which they declined to accept. Appellees claimed that the twenty bales of the September shipment were worth sixty-five cents per pound, and that the twenty-four bales of the October shipment were worth fifty cents per pound.

It will be observed that the shipments involved were interstate shipments—therefore the principles of law governing the measure of damages as declared by the United States supreme court govern. Where there is failure on the part of a carrier to deliver the goods intrusted to it for shipment, and such failure is either caused by the loss of the goods by the carrier or their damage or destruction, the owner's basis of recovery is the value of the goods at the time and place delivery is made, or, if delivery is not made, the time and place delivery should have been made, less freight charges. *Chicago Railway Co.* v. *McCaull-Dinsmore Co.*, 253 U. S. 97, 40 S. Ct. 504, 64 L. Ed. 801; *Barrett* v. *Van Pelt*, 268 U. S. 85, 45 S. Ct. 437, 69 L. Ed. —; 5 Elliott on Railroads, section 2762, p. 737.; 3 Hutchinson on Carriers (3d Ed.), section 1360, p. 1610; 3 Sutherland on Damages (3d Ed.), pp. 2723 and 2727; 10 C. J. 395.

The cotton involved in this case was not delivered to appellees; they declined to accept tender by appellant of the forty-three bales of cotton.

It devolved upon appellees, in making out their case, to show by a preponderance of the evidence the market value of the forty-four bales of cotton at its destination (New Orleans) at the time it should have reached New Orleans in due course of transportation over appellant's line of railroad. One of appellant's contentions is that

appellees failed to meet that burden. Appellees' testimony tended to show the market value of the cotton on the days it was damaged by fire, September 21, 1920, and October 18, 1920. But, as we understand the record in this case, there is an entire absence of any evidence tending to show the market value of the cotton at New Orleans, its place of destination, at the time it was due to be delivered there. It is a matter of common knowledge that the fluctuations of the cotton market even over a period of only a few days are often very great; that in fact at times fluctuations in the market even for a day show rises and declines of as much as twenty-five dollars or thirty dollars a bale—probably more. Appellees doubtless could have shown and should have shown by their testimony when the cotton should have been delivered at New Orleans by showing the usual time it took appellant to carry cotton from Tchula to New Orleans. The market value of the cotton at the dates it was damaged by fire may have been materially higher or lower than its market value at the dates it was due at New Orleans.

Appellant contends, further, that the testimony failed to show, not only the market value of the cotton at the time it should have been delivered at New Orleans, but any value whatever, because there was no evidence as to the staple and grade of the cotton, and therefore no competent evidence as to the value of the cotton at any time; and that all the testimony on the subject was that of Charles E. Levy, of appellees' firm, which was entirely hearsay. Mr. Levy testified that in 1920 appellees produced on their Horseshoe Plantation only the Webber variety of cotton; that although he had not seen the particular cotton involved in this case, still he often visited the Horseshoe Plantation, and had seen other cotton raised on the plantation during 1920, and the staple of all of the crop of that year was from one and three-sixteenths of an inch to one and one-fourth of an inch. His testimony tended to show, further, that all

141 Miss.—14.

cotton produced by appellees on the Horseshoe Plantation in 1920 was substantially the same staple and grade. The particular cotton involved in this case the witness had not seen. We are of opinion that the evidence of the witness Levy was sufficient to go to the jury on the question of the staple and grade of the cotton; it appears to have been the best evidence obtainable. Appellees will not be denied a recovery for the injury they have suffered because, through the fault of appellant, appellees were unable to prove the exact staple and grade of the damaged cotton. They were only required to adduce the best evidence, which they did.

The testimony of the witness Levy as to the value of the cotton was confined to the dates it was damaged by fire. In addition, all of it was hearsay and therefore incompetent, except that part consisting of the New Orleans Cotton Exchange reports. Appellant argues that these reports were not admissible as evidence because they were not the best evidence, and because they related to the dates the cotton was damaged by fire and not the dates it was due to be delivered in New Orleans. The latter contention, as we have held above, is well founded; the former, we think, is not.

Cotton has a fixed market value from day to day, which is published by practically all, if not all, of the daily papers in the cotton belt. In addition to being published in the newspapers, the various cotton exchanges publish reports giving the market value of the different staples and grades of cotton, and also send them out through the mails to their members and customers. These market quotations are relied on by the cotton trade; they are accepted without question as containing the true market value of the different grades and staples of cotton in the cotton markets of the country. The cotton trade without questioning act on them, often investing enormous sums of money in cotton on the faith of their correctness. All of this is a matter of common knowledge, known to the court as well as to the cotton trade and

the public generally. The best evidence touching any given question of fact is that evidence which those concerned rely and act on. We are of opinion, therefore, that the daily market quotations, as published in the newspapers and sent out by the cotton exchanges of the country, are the best evidence of the market value of cotton for the period they cover.; that a witness having knowledge of such matters will be permitted to identify and introduce in evidence without further verification such current market reports as evidence of such value. The only reason why the New Orleans Cotton Exchange reports offered in evidence by the witness Levy should have been ruled out was because they did not cover the time the cotton should have been delivered at New Orleans.

Appellant's special plea No. 1 set up the defense that the cotton in question was insured by appellees, who had collected the insurance, and that appellant was therefore entitled to set off or recoup the insurance so collected by appellant against the amount of its liability to appellees. There was attached to this special plea as a part of it the bills of lading for the cotton which contained, among other provisions, the following:

"Any carrier or party liable on account of loss or damage to any of said property shall have the full benefit of any insurance that may have been effected upon or on account of said property so far as this shall not avoid the policies or contracts of insurance."

That provision in the bill of lading was the basis of this special plea. Appellees made a motion for an order to require appellant to make the special plea more definite. This motion was overruled by the court. Thereupon appellees were allowed to file, and did file, a replication to the special plea, with which they filed as an exhibit thereto the original insurance policy covering the cotton involved. Appellant moved to strike out the replication, which motion was overruled. Thereupon appellant took issue on the replication. It will be observed.

therefore, that the question raised by the special plea and replication was whether the provisions of the insurance policy avoided that stipulation in the bill of lading above quoted. Neither appellant nor appellee offered any evidence on this question. Appellant urges that the burden of showing that the provisions of the insurance policy avoided the said stipulation in the bill of lading was on appellees; while appellees contend that it was on appellant.

By its special plea appellant averred that it was entitled to set off the amount of insurance collected by appellees on the cotton because of the provision in the bill of lading so providing. The plea set up an affirmative defense, a defense which appellant was required to prove, having pleaded it. And what was that defense? It was that the bill of lading gave appellant the benefit of the insurance provided to do so would not avoid the insurance policy. Appellees, instead of responding by replication to the plea, should have simply taken issue thereon. It was not necessary for the appellees to reiterate in their replication a material averment in appellant's plea. But appellees' replication, because of its form, did not change the burden of proof. The burden of proof will not be changed by mispleading unless the adverse party is misled by such mispleading. We hold that the burden was on appellant in establishing its plea to bring itself within the last clause of the provision in the bill of lading relied on by showing that to give appellant the benefit of the insurance would not avoid the insurance policy. We do not deem the other questions argued on behalf of appellant of sufficient seriousness to call for a discussion by the court; it is sufficient to say that we do not think they have any merit.

Neither do we think there is any merit in appellees' cross-appeal. There was sufficient evidence to go to the jury on the issue of whether the cotton was gin-fired or the fire originated after it had been delivered to appellant. It follows from these views that the case is affirmed

on both direct and cross-appeal as to the question of liability, and reversed on direct appeal for another trial on the question as to the amount of damages suffered by appellees on account of the October shipment.

Affirmed on direct and cross-appeal as to liability, and reversed on direct appeal as to the question of damages alone.

*Affirmed and reversed.*