**PENNSYLVANIA R. CO.**

v.

**NEWMYER et al.**

No. 1380.

Municipal Court of Appeals for the
District of Columbia.

Argued Sept. 28, 1953.

Decided Nov. 20, 1953.

James C. McKay, Washington, D. C., for appellant. Paul F. McArdle, Washington, D. C., also entered an appearance for appellant.

Alvin L. Newmyer, Jr., Washington, D. C., for appellees.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

This was a suit against a railroad carrier [1] for loss caused by delay in delivery

---

1. Suit was brought against the delivering carrier, pursuant to the Interstate Commerce Act of 1887, 24 Stat. 386, as amended, 49 U.S.C.A. § 20(11), which

of a carload of lettuce. Trial was by judge and the decision was in favor of plaintiff. Defendant carrier appeals, contending that the evidence did not support the finding of negligence and that the proof of damage was insufficient.

■ From a stipulation of facts, from various documents revealing in detail the movements of the freight car involved, and from testimony at the trial, the trial court could have found the facts to be as follows: The car was shipped from El Centro, California, on January 31, 1951, consigned to Cincinnati, Ohio. Its first point of interchange was El Paso, Texas, where it arrived on February 2, having been delayed approximately 16 hours because of work stoppages by yardmen. There the car was delivered to Texas and Pacific Railway Company, which in turn delivered it to Missouri Pacific Railroad Co. in Texarkana, Texas, and the latter company transported the car to Memphis, Tennessee. There, after additional delays totaling approximately 20 hours, it was delivered to Louisville and Nashville Railroad Company at 5:15 p. m. on February 7. On the morning of February 7, the car was reconsigned to John L. Senini Co., Cincinnati, Ohio, and by that company, on the same morning, reconsigned to Max Shapiro, and diverted to Washington. From Memphis the car was taken to DeCoursey, Kentucky, arriving there at 2:15 a. m. on February 9, some 10 hours behind schedule. After re-top icing pursuant to the instructions in the last reconsignment order, the car was delivered to Baltimore and Ohio Railroad in Cincinnati at 6:20 a. m. on February 10. It arrived in Washington at 11:30 p. m. on February 11 in a train scheduled to arrive at 8:45 p. m., and was placed on the "perishable track" ready for unloading at 1:15 a. m. on February 12.[2]

The evidence clearly supports a finding that there were substantial delays in the scheduled movement of the car. Appellant admits delays amounting to approximately two days, while appellees say the delays totaled almost three days. But taking either version as correct, we think the evidence was sufficient to support a finding that the shipment was not made with reasonable dispatch.

Unreasonable delay having been established, the next question is whether it was attributable to the negligence of any carrier. The uniform bill of lading, which was part of the stipulation, specifies that "the burden to prove freedom from such negligence shall be on the carrier."[3] We are clear in our view that appellant's evidence did not, as a matter of law, establish freedom from negligence. The only explanation offered for the various delays is that they were in large part due either to strikes or adverse weather conditions. There is nothing in the record to show that the railroads exercised due care in coping with the unusual traffic conditions. In the absence of such evidence the trial court was justified in finding that the delays were due to negligence.

■ Appellant argues that even though there was unreasonable delay, appellees cannot rely on delays occurring before the car was reconsigned to Shapiro on February 7, because until that time he had no interest in the contents of the car, and the carriers owed no duty to him. But there was testimony that Shapiro (by whose executors this suit was brought) bought the lettuce on January 30, before it left California. This was sufficient to establish that he was the owner of the shipment during the time all delays occurred, even though he was not named as consignee until February 7. As the true owner of the

imposes liability on the delivering carrier for delay caused by any carrier.

2. The lettuce was not sold in Washington, but was shipped to Philadelphia by Shapiro; but appellees concede that damages are to be measured by the market price in Washington.

3. Even apart from this provision of the bill of lading, the general rule appears to be that once plaintiff has made out a case of unreasonable delay, the burden rests upon the carrier to explain it. 9 Am. Jur., Carriers, § 526.

goods, he was entitled to recover for the delay. Moore v. Atlantic Coast Line. R. Co., 85 S.C. 19, 67 S.E. 11. See also Railway Express Agency v. Huntress, D.C. Mun.App., 51 A.2d 379.

The foregoing part of this opinion was prepared by the Chief Judge and represents the unanimous opinion of the court. However, a majority of the court differs with the Chief Judge with respect to the claim of appellant that there was no adequate basis for determination of damages. We think this claim is well grounded.

■ It is not questioned that the measure of appellee's damage is the difference between the market value of the lettuce on the day it should have been delivered and the market value on the day of actual delivery.[4] The day the lettuce should have arrived was February 10; 1951, a Saturday. The day it was actually delivered was either February 12 or 13.[5] The only evidence of market value offered was in the form of Federal-State Market News Service Reports issued by the Department of Agriculture. Such reports appear not to be issued for Saturdays and appellee offered reports for Friday, February 9 and for February 12 and 13. The market for lettuce on the 9th was steady, but was weaker on the 12th and 13th and the price on the 12th was materially lower than the price on the 9th, and the price on the 13th was still lower. There was no evidence of the condition of the market on the 10th or the market price on that day for lettuce. Thus, as we see it, there was no evidentiary basis for determination by the trial court of the market value of the lettuce on the day it should have been delivered and consequently no basis for determining what damage, if any, appellee suffered.

Government market reports are not the only means of proving market value and it cannot be said that because no report was issued for Saturday, February 10, that the best evidence of the market on that day were the reports for the previous Friday and the following Monday. In an unstable or changing market, which appears to be the case here, it would be pure surmise to say that the market on Saturday was the mean of the Friday and Monday markets. Evidence of actual sales on Saturday or the testimony of an expert based on such sales would furnish a far more accurate basis. We hold that evidence of market value on the day the lettuce should have been delivered was totally lacking and for that reason the judgment cannot stand.[6]

Reversed with instructions to grant a new trial on the single issue of damages.

CAYTON, Chief Judge (dissenting).

The carrier does not challenge the reliability of the Department of Agriculture reports or their accurate reflection of actual market conditions on the days for which they were issued. It has repeatedly been held that such reports are competent to prove market value.[1] "It is a rule recognized generally that market reports or quotations as contained in newspapers and trade journals are competent evidence of the state of the market, * * * and * * * are far more satisfactory and reliable than individual entries or individual sales or inquiries * * *."[2]

I would hold that the market reports for February 9th and 12th furnished an adequate basis upon which the trial court could determine the status of the market on February 10. Verbal testimony on the

---

4. Railway Express Agency v. Huntress, D.C.Mun.App., 51 A.2d 379.

5. The record does not show which of these dates was found by the trial court to be the date of delivery.

6. See Barrett v. Van Pelt, 268 U.S. 85, 45 S.Ct. 437, 69 L.Ed. 857; Davis v. Hunter, 79 Ind.App. 462, 138 N.E. 785; Yazoo & M. V. R. Co. v. M. Levy & Sons, 141

Miss. 199, 106 So. 525; Railway Express Agency v. McCarrick, Tex.Civ.App., 69 S.W.2d 803.

1. See, e. g., Commonwealth of Virginia v. West Virginia, 238 U.S. 202, 212, 35 S.Ct. 795, 59 L.Ed. 1272; 6 Wigmore, Evidence (3rd Ed.) § 1704.

2. Note, 43 A.L.R. 1192.

subject would have been no more reliable or satisfactory.

The law is well settled that a plaintiff is required to prove with reasonable certainty that damage was suffered.[3] This appellees did by establishing the market price on the 10th. Complaint cannot be made because the amount of damages cannot be determined with absolute certainty.[4] Damages need not be reduced to a mathematical formula. "It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate."[5]

3. 25 C.J.S., Damages, § 27; 15 Am.Jur., Damages, § 22.

4. Bigelow v. RKO Radio Pictures, 327 U. S. 251, 66 S.Ct. 574, 90 L.Ed. 652, rehearing denied, 327 U.S. 817, 66 S.Ct. 815, 90 L.Ed. 1040; Eastman Kodak Co. v. Southern Photo Materials Co.. 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684. See also Stern v. Ace Wrecking Co., D.C.Mun. App., 38 A.2d 626.

5. Eastman Kodak Co. v. Southern Photo Materials Co., supra, 273 U.S. at page 379, 47 S.Ct. at page 405, 71 L.Ed. 684.