EASTMAN KODAK COMPANY OF NEW YORK *v.* SOUTHERN PHOTO MATERIALS COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 6. Argued November 19, 1925.—Decided February 21, 1927.

1. Under § 12 of the Clayton Act, a suit against a corporation for injuries sustained from violations of the Anti-Trust Act may be brought in a federal court in any district in which the corporation transacts business, although neither residing nor "found" there; and the process may be served in another district in which the corporation either resides or is "found." P. 370.

2. A corporation is engaged in transacting business in a district, in the sense of this venue provision, if in fact, in the ordinary and usual sense, it "transacts business" therein of any substantial character. P. 373.

3. A corporation is none the less engaged in transacting business in a district, within the meaning of this section, because of the fact that such business may be entirely interstate in character and be transacted by agents who do not reside within the district. P. 373.

4. Congress may, in the exercise of its legislative discretion, fix the venue of a civil action in a federal court in one district, and authorize the process to be issued to another district in which the defendant resides or is found. P. 374.

5. A corporation which, in a continuous course of business, was engaged, not only in selling and shipping its goods to dealers within a certain district, but also in soliciting orders therein through its salesmen and promoting the demand for its goods through its demonstrators for the purpose of increasing its sales, was transact-

ing business in that district, within the meaning of this venue provision of the Clayton Act. P. 374.

6. That the intent of a defendant manufacturer in refusing to continue selling its goods to a plaintiff retailer at dealers' discounts was to perpetuate its monopoly in such goods, may be inferred from circumstances. P. 375.

7. Such refusal was not justified by the fact that the plaintiff retailer has previously undertaken to handle goods of another manufacturer under a preferential contract, when it was not shown that the defendant knew of such contract at the time of the refusal. P. 375.

8. In an action for injury to an established retail business due to a defendant manufacturer's monopoly of a line of the goods dealt in and to its refusal, in the interest of its monopoly, to continue supplying such goods to the plaintiff at retailers' discounts, the gross profits derived by the plaintiff from selling such goods during a period preceding the refusal, less the expense, additional to the general expenses of the business, which would have been incurred in handling them during the period in suit, may be used as a standard in measuring the damages, if the plaintiff had not been *in pari delicto* with the defendant in the monopoly, and the profits were not increased thereby, and if the other facts are such that the inference of the lost anticipated profits from the past profits is reasonable. P. 376.

9. Damages are not uncertain because they cannot be calculated exactly. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate. P. 378.

10. A defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness as would otherwise be possible. P. 379.

295 Fed. 98, affirmed.

ERROR to a judgment of the Circuit Court of Appeals which affirmed a judgment of the District Court in a suit brought to recover damages for injuries sustained through violation of the Sherman Anti-Trust Act. See also 234 Fed. 955.

*Mr. John W. Davis*, with whom *Messrs. Frank L. Crawford* and *Clarence P. Moser* were on the brief, for plaintiff in error.

The attempted service of process upon the defendant, whether in the State of Georgia or in the State of New York, was void and the court below had no jurisdiction in the premises. *People's Tobacco Co.* v. *American Tobacco Co.*, 246 U. S. 79; *Internat. Harvester Co.* v. *Kentucky*, 234 U. S. 579; *Minn. Comm. Assn.* v. *Benn*, 261 U. S. 140; *Davis* v. *Farmers Equity Co.*, 262 U. S. 312; *V. S. & P. Ry.* v. *De Bow*, 148 Ga. 738; *Southeastern Dist. Co.* v. *Marmon Co.*, 159 Ga. 150; *Chase Bag Co.* v. *Munson S. S. Line*, 295 Fed. 990; *Holzer* v. *Dodge Bros.*, 233 App. Div. 216. Distinguishing *N. W. Consol. Milling Co.* v. *Massachusetts*, 246 U. S. 147.

That Congress, by inserting in § 12 of the Clayton Act, after the words "may be found," the additional words " or transacts business," did not intend to broaden the section but merely to make explicit what this Court had already decided, is shown by the legislative proceedings. *Duplex Co.* v. *Deering*, 254 U. S. 443. Language of this Court in the *People's Tobacco* case, defines the words "resides or is found" as the equivalent of "carrying on business." In *St. Louis S. W. Ry. Co.* v. *Alexander*, 227 U. S. 218, it had been said that, "A long line of decisions in this Court has established that in order to render a corporation amenable to service of process in a foreign jurisdiction it must appear that the corporation is transacting business in that district to such an extent as to subject it to the jurisdiction and laws thereof." *Frey & Son* v. *Cudahy Packing Co.*, 228 Fed. 209, and the decision in the instant case (234 Fed. 955), were both rendered long before the decision of this Court in the *People's Tobacco* case. Distinguishing *Gen. Investment Co.* v. *Ry. Co.*, 260 U. S. 261.

The plaintiff, while a customer of the defendant, was a participant in the latter's unlawful acts and was, therefore, *in pari delicto*, and the profits earned by plaintiff during the period of such illegality cannot be used as a

standard by which to measure the damages which it al-
leges it sustained in the period for which it was allowed
to recover.    There is, therefore, no competent proof of
damages in the record.    The court would not have then
given relief to either party to the illegal contract for in-
juries caused by the other party and growing out of the
contract relation.    *McMullen* v. *Hoffman,* 174 U. S. 639;
*Coppell* v. *Hall,* 7 Wall. 542; *Cont. Wall Paper Co.* v.
*Voight & Sons Co.,* 212 U. S. 227; *Harriman* v. *Northern
Securities Co.,* 197 U. S. 244; *Hall* v. *Corcoran,* 107 Mass.
251.    Mere participation and acquiescence by the plain-
tiff in the unlawful system of defendant made the former
a party to the wrongdoing and itself a violator of the
Sherman Act.    *Sage* v. *Hampe,* 235 U. S. 99; *Victor Co.*
v. *Kemeny,* 271 Fed. 810; *Eastman Kodak Co.* v. *Black-
more,* 277 Fed. 694; *Tilden* v. *Quaker Oats Co.,* 1 Fed.
(2d) 160; *Bluefields S. S. Co.* v. *United Fruit Co.,* 243
Fed. 1.    The assumed fact that plaintiff accepted the
terms of sale and joined with defendant in maintaining
the latter's illegal system because, as stated by the trial
judge in his charge; "he needed the goods and that was
the only way he could get them," did not excuse the
plaintiff nor relieve it of the penalties of one who is *in
pari delicto.*    Its necessity did not constitute legal duress.
*Eastman Kodak Co.* v. *Blackmore, supra; Dennehy* v.
*McNulta,* 86 Fed. 825; *Detroit Edison Co.* v. *Wyatt Coal
Co.,* 293 Fed. 489; *Radich* v. *Hutchins,* 95 U. S. 210;
*Chesebrough* v. *United States,* 192 U. S. 253.    Distin-
guishing *Ramsey* v. *Assoc. Bill Posters,* 260 U. S. 501.

The only measure of damages proposed by plaintiff
and allowed by the court was the assumed net profits
which plaintiff claims it would have made after it ceased
to be an Eastman customer, had it been allowed to pur-
chase Eastman goods at dealers' discounts, such net profits
being arrived at by taking the actual gross profits which
plaintiff claims to have made during the period before it

so ceased, and deducting therefrom a speculative cost of conducting the increased business, which it is claimed would have resulted from the handling of Eastman goods. In short, the whole recovery hinged upon the use of the alleged gross profits of the earlier period, as a standard of comparison by which to determine the amount of net profits claimed to have been lost in the later period. It is well settled that one may not use the earnings or profits which he made in the course of a violation of law, or in a business which was illegal, as a measure of the damages which he suffered after the date when he claimed that his business was interrupted. *Riggs* v. *Palmer,* 115 N. Y. 506; *Murray* v. *Interurban Ry. Co.,* 118 App. Div. 35; *Victor Co.* v. *Kemeny, supra; Eastman Co.* v. *Blackmore, supra; Raynor* v. *Blatz Brewing Co.,* 100 Wis. 414; *Continental Paper Co.* v. *Voight,* 212 U. S. 227. Distinguishing *Ramsey* v. *Assoc. Bill Posters,* 260 U. S. 501.

There was no proof of damages such as, under the authorities, is necessary to enable plaintiff, in cases under the Anti-Trust Acts, to recover any damages whatever. *Keogh* v. *C. & N. W. R. R. Co.,* 260 U. S. 156; *Central Coal Co.* v. *Hartman,* 111 Fed. 96; *Locker* v. *Amer. Tobacco Co.,* 218 Fed. 447; *Amer. Slate Co.* v. *O'Halloran,* 229 Fed. 77; *Cramer* v. *Grand Rapids Showcase Co.,* 223 N. Y. 63; *McSherry Mfg. Co.* v. *Dowagiac Mfg. Co.,* 160 Fed. 948; *Montgomery* v. *C. B. & Q. R. R. Co.,* 228 Fed. 616. Plaintiff offered no proof of the amount of its capital either before or after the alleged interruption, either as to the whole amount invested in its entire business or as to the amount invested in that part of the business which concerns Eastman goods.

The sale of Eastman goods formed only a small part of the total sales of plaintiff. If the entire business be considered as a unit and the total expenses and cost of goods be deducted from the entire receipts, then the plaintiff lost money in 1908 and 1909; whereas, in 1910

and 1911 after the alleged interruption, it cleared a substantial net profit. There is no provision in any of the decisions cited above for allowing the plaintiff, in such cases, to estimate that his total sales would have been increased, if permitted during the period when he was unable to procure the goods in question. The precise point was decided in *Horton* v. *Hall & Clark Mfg. Co.,* 94 App. Div. 404. *Frey* v. *Welch Co.,* 240 Fed. 114, was reversed in 261 Fed. 68. Distinguishing *Lincoln* v. *Orthwein,* 120 Fed. 880. The assumption that, had plaintiff handled Eastman goods after April, 1910, it would have sold at least as great a quantity of them as before that date, is entirely speculative.

The plaintiff offered no proof as to the reason why defendant declined to continue plaintiff as a customer on the terms formerly in force between them The presumption is that the refusal was made either for good or for purely indifferent reasons, and that it was therefore entirely legal. *United States* v. *Colgate & Co.,* 250 U. S. 300. This presumption not having been overcome, the plaintiff in error was entitled to a dismissal or a direction on this ground alone. The record, it is true, fails to show expressly whether defendant knew the provisions of the Ansco contract at or about the time it was entered into. The plaintiff on its part assumed that defendant had such knowledge. In any event, since these provisions, if known, would have furnished a lawful reason for terminating the relations between the parties, even if defendant was not aware of them at the time, it should be permitted to take advantage of them when they became known to it. This is the well established rule in the law of master and servant and of agency. *In re Nagle,* 278 Fed. 105; *Farmer* v. *First Trust Co.,* 246 Fed. 671; *Carpenter Steel Co.* v. *Norcross,* 204 Fed. 537; *Sanborn* v. *United States,* 135 U. S. 271; *McGar* v. *Adams,* 65 Ala. 106.

Substantially the same rule applies wherever a fiduciary relation exists. An apparently contrary rule in the law of contracts has been modified so that it no longer conflicts with the foregoing authorities. *Strasbourger* v. *Leerburger,* 233 App. Div. 55; *Granger Co.* v. *Universal Mach. Corp.,* 193 App. Div. 234.

*Mr. Daniel MacDougald,* with whom *Mr. J. A. Fowler* was on the brief, for the defendant in error.

On the question of jurisdiction: *Peoples Tobacco Co.* v. *American Tobacco Co.,* 246 U. S. 70; *Frey & Son* v. *Cudahy Co.,* 228 Fed. 209; *Eastman Kodak Co.* v. *Southern Photo Co.,* 234 Fed. 955; *International Harvester Co.* v. *Kentucky,* 234 U. S. 579; *Davis* v. *Farmers' Co-operative Co.,* 262 U. S. 312; *General Investment Co.* v. *Lakeshore,* 260 U. S. 261.

On the right of the plaintiff to sue: *Ramsey* v. *Associated Bill Posters,* 260 U. S. 501, *Connally* v. *Union Pipe Co.,* 184 U. S. 540; *Wilder Mfg. Co.* v. *Corn Products Co.,* 236 U. S. 165. Distinguishing *Bluefields S. S. Co.* v. *United Fruit Co.,* 243 Fed. 1, *Victor Talking Mach. Co.* v. *Kemeny,* 271 Fed. 810, *Eastman Kodak Co.* v. *Blackmore,* 277 Fed. 694, and *Tilden* v. *Quaker Oats Co.,* 1 Fed. (2d) 160.

On the question of damages: *Central Coal & Coke Co.* v. *Hartman,* 111 Fed. 96; *Lanier Gas Engine Co.* v. *Du Bois,* 130 Fed. 834; *Hollweg* v. *Schaeffer Brokerage Co.,* 197 Fed. 689; *Yates* v. *Wyhel Coke Co.,* 221 Fed. 603; *Homestead Co.* v. *Des Moines Electric Co.,* 248 Fed. 439; *Frey & Son* v. *Welch Grape Juice Co.,* 240 Fed. 114; *Lincoln* v. *Orthwein,* 120 Fed. 880.

The suit was brought to recover loss of income to an established business. The business continued in operation throughout the entire period covered by the suit. The loss of income is the loss of profits on sales which the plaintiff could have made during the period covered

by the suit except for the defendant's illegal act. In proving the damages, but two factors must be shown. First, that a loss of income resulted from the defendant's illegal refusal to sell to the plaintiff, and, second, the extent of the loss. The previous sales and the previous income would be sufficient evidence to authorize a verdict for the plaintiff and form the basis for the jury to conclude that the same income would have been realized during the period of the suit. The sales were detailed for a period of four years prior to the defendant's refusal to sell to the plaintiff. The gross profits on such sales were likewise shown. Plaintiff, of course, was not entitled to recover the gross profits. This would violate the principle of indemnity. The plaintiff could only recover the gross profit or income less such items of expense as were saved to it by reason of not actually making these sales. The evidence shows that the plaintiff continued its business during the entire period covered by the suit, consequently it still had the items of general expense, incident to carrying on its business, such as administrative, organization and selling expenses. In fact, the evidence showed that the plaintiff continued to travel the territory and that its salesmen solicited orders continuously throughout this territory and from the plaintiff's regular trade. The evidence shows that the plaintiff in continuing the operation of its business still had every expense incident thereto and incident to a sale of the goods which it could no longer obtain, except the actual expenses incident to handling these goods through its established business. This evidence more than supports the deduction that the plaintiff would have sold the same amount of goods during the period covered by the suit that it did prior thereto, when during the period of the suit plaintiff had increased its number of customers 60%. The evidence shows that the plaintiff's sales per photographer dropped from $79.00

prior to the period covered by the suit to $36.09 per photographer during that period.

There was direct testimony that the plaintiff could not supply its customers more than 25% in kind and value of the articles consumed by them in the operation of their studios. This was more than substantial data from which the extent of the damage could reasonably be inferred or determined by the jury.

The plaintiff, with an established organization, was a "going concern" with a demand for certain articles which it could not supply despite the fact that the plaintiff had every "going concern" expense incident to supplying such articles.

MR. JUSTICE SANFORD delivered the opinion of the Court.

This suit was brought by the Southern Photo Materials Co., a Georgia corporation, in 1915, in the Federal District Court for Northern Georgia, against the Eastman Kodak Co., a New York corporation, to recover damages for injuries sustained by the plaintiff through the defendant's violation of the Sherman Anti-Trust Act.[1] Proceeding under § 12 of the Clayton Act,[2] process was issued and served upon the defendant, pursuant to an order of the court, at Rochester, New York, where it had its principal place of business. The defendant, appearing specially, traversed the return, entered a plea to the jurisdiction, and moved to quash the service. The jurisdictional issues thus raised were tried by the judge, who overruled

---

[1] Act of July 2, 1890, c. 647, 26 Stat. 209. This Act makes it illegal, *inter alia*, to monopolize, or combine to monopolize, any part of the trade or commerce among the several States, § 2; and authorizes any person injured in his business or property by reason of anything declared to be unlawful by the Act, to sue therefor and recover three fold the damages sustained and a reasonable attorney's fee, § 7.

[2] Act of October 15, 1914, c. 323, 38 Stat. 730.

these defenses. 234 Fed. 955. The defendant, by leave of court, then answered on the merits. The trial to the court and jury resulted in a verdict for the plaintiff assessing its actual damages at $7,914.66. Judgment was entered against the defendant for triple this amount and an attorney's fee. This was affirmed by the Circuit Court of Appeals. 295 Fed. 98. And the case was then brought here by writ of error, prior to the Jurisdictional Act of 1925.

The plaintiff operates a photographic stock house in Atlanta and deals in photographic materials and supplies, which it sells to photographers in Georgia and other Southern States. The defendant is a manufacturer of photographic materials and supplies, which it sells to dealers throughout the United States.

The case made by the allegations of the complaint was, in substance, this: The defendant, in violation of the Anti-Trust Act, had engaged in a combination to monopolize the interstate trade in the United States in photographic materials and supplies, and had monopolized the greater part of such interstate trade. This had been brought about by purchasing and acquiring the control of competing companies engaged in manufacturing such materials, and the businesses and stock houses of dealers; by restraining the vendors from re-entering these businesses; by imposing on the dealers to whom it sold goods restrictive terms of sale fixing the prices at which its goods could be resold and preventing them from handling competitive goods; and by other means of suppressing competition.

Prior to 1910 the plaintiff had dealt with the defendant and purchased its goods on the same terms as other dealers, with whom it was enabled to compete; but in that year the defendant, having acquired the control of the stock houses in Atlanta which were in competition with the plaintiff and unsuccessfully attempted to purchase the plaintiff's business, had, in furtherance of its purpose to

monopolize, thereafter refused to sell the plaintiff its goods at the dealers' discounts, and would no longer furnish them except at the retail prices at which they were sold by other dealers and the agencies which the defendant owned and controlled, with whom the plaintiff could no longer compete. And, the plaintiff being thus deprived, by reason of the monopoly, of the ability to obtain the defendant's goods and supply them to its trade, its business had been greatly injured and it had sustained large damages in the loss of the profits which it would have realized in the four years covered by the suit had it been able to continue the purchase and sale of such goods.

The answer denied that the defendant had combined to monopolize or monopolized interstate trade, or refused to sell its goods to the plaintiff at the dealers' discounts in furtherance of a purpose to monopolize; and averred that the defendant had not only committed no actionable wrong, but that in any event the plaintiff had sustained no damages capable of ascertainment upon any legal basis.

While many errors were assigned, some of which were also specified, in general terms, in the defendant's brief in this Court, we confine our consideration of the case in this opinion to the controlling questions which are stated in that brief to present the chief issues here in controversy, and to which alone the argument in the brief is directed. See *I. T. S. Co.* v. *Essex Rubber Co.,* 272 U. S. 429. These do not involve the existence of the defendant's monopoly—which is not questioned here[3]—but relate solely to the questions whether there

---

[3] The plaintiff's allegations in this respect were supported on the trial by a final decree that had been entered in 1916 in another District Court in a suit in equity brought by the United States against the defendant and others, which the plaintiff introduced, under § 5 of the Clayton Act, as *prima facie* evidence of the defendant's violation of the Anti-Trust Act.

42847°—27——24

was local jurisdiction or venue in the District Court; whether the refusal of the defendant to continue to sell the plaintiff its goods at the dealers' discounts was in furtherance of a purpose to monopolize and constituted an actionable wrong which could form the basis of any recovery; and whether there was any competent and legal proof on which a measurement of the plaintiff's damages could be based.

1. Whether or not the jurisdiction of the District Court was rightly sustained—which resolves itself into a question whether the venue of the suit was properly laid in that court—depends upon the construction and effect of § 12 of the Clayton Act and its application to the facts shown by the evidence set forth in the separate bill of exceptions relating to the hearing on the jurisdictional issues. *Dunlop* v. *Munroe*, 7 Cranch 242, 270; *Jones* v. *Buckell*, 104 U. S. 554, 556.

It appears from this evidence that the defendant— which resides and has its principal place of business in New York—had not registered in Georgia as a non-resident corporation for the purpose of doing business in that State, and had no office, place of business or resident agent therein. It had, however, for many years prior to the institution of the suit, in a continuous course of business, carried on interstate trade with a large number of photographic dealers in Atlanta and other places in Georgia, to whom it sold and shipped photographic materials from New York. A large part of this business was obtained through its travelling salesmen who visited Georgia several times in each year and solicited orders from these dealers which were transmitted to its New York offices for acceptance or rejection. In furtherance of its business and to increase the demand for its goods, it also employed travelling " demonstrators," who visited Georgia several times in each year, for the purpose of exhibiting and explaining the superiority of its goods to photographers and other

users of photographic materials. And, although these demonstrators did not solicit orders for the defendant's goods, they took at times retail orders for them from such users, which they turned over to the local dealers supplied by the defendant.

It is clear that upon these facts this suit could not have been maintained in the Georgia district under the original provision in § 7 of the Anti-Trust Act that anyone injured in his person or property "by any other person or corporation" by reason of anything. declared to be unlawful by the Act, might sue therefor "in the district in which the defendant resides or is found."[4] In *Peoples Tobacco Co.* v. *Am. Tobacco Co.*, 246 U. S. 79, 84, 86—decided in 1918—it was held that this provision, as applied to a corporation sued in a district in which it did not reside, required that it "be present in the district by its officers and agents carrying on the business of the corporation," this being the only way in which it could be said to be "found" within the district; that to make it amenable to service of process in the district, the business must be of such nature and character as to warrant the inference that it had subjected itself to the local jurisdiction, and was by its duly authorized officers or agents present therein; and that advertising its goods in a State and sending its soliciting agents therein, did not amount to "that doing of business" which subjected it to the local jurisdiction for the purpose of serving process upon it.

Manifestly the defendant was not present in the Georgia district through officers or agents engaged in carrying on business of such character that it was "found" in that district and was amenable to the local jurisdiction for the service of process.

---

[4] A like provision was contained in the Tariff Act of 1894, 28 Stat. 509, c. 349, which made illegal, combinations and trusts in restraint of import trade. §§ 73, 74.

However, by the Clayton Act—which supplemented the former laws against unlawful restraints and monopolies of interstate trade—the local jurisdiction of the district courts was materially enlarged in reference to suits against corporations. By § 4 of that Act it was provided that any person "injured in his business or property by reason of anything forbidden in the anti-trust laws" might sue therefor in the district "in which the defendant resides or is found or has an agent." Whether, as applied to suits against corporations, as distinguished from those against individuals, the insertion of the words "or has an agent" in this section can be held, in the light of the decision in the *Peoples Tobacco Co.* case, to have enlarged to any extent the jurisdictional provision in § 7 of the Anti-Trust Act, we need not here determine. Be that as it may, it is clear that such an enlargement was made by § 12 of the Clayton Act—dealing specifically with the venue and service of process in suits against corporations—under which the plaintiff proceeded in the present case. This provided that "any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found *or transacts business;* and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." That this section altered the venue provisions in respect to suit under the anti-trust laws was pointed out in *General Inv. Co.* v. *Lake Shore Ry.,* 260 U. S. 261, 279. And we think it clear that, as applied to suits against corporations for injuries sustained by violations of the Anti-Trust Act, its necessary effect was to enlarge the local jurisdiction of the district courts so as to establish the venue of such a suit not only, as theretofore, in a district in which the corporation resides or is "found," but also in any district in which it "transacts business"—

although neither residing nor " found " therein—in which case the process may be issued to and served in a district in which the corporation either resides or is " found "; and, further, that a corporation is engaged in transacting business in a district, within the meaning of this section, in such sense as to establish the venue of a suit—although not present by agents carrying on business of such character and in such manner that it is " found " therein and is amenable to local process,—if in fact, in the ordinary and usual sense, it " transacts business " therein of any substantial character. This construction is in accordance, not only with that given this section by the two lower courts in the present case, but also with the decisions in *Frey & Son* v. *Cudahy Packing Co.* (D. C.), 228 Fed. 209, 213 and *Haskell* v. *Aluminum Co. of America* (D. C.), 14 F. (2d) 864, 869. And see *Green* v. *Chicago, B. & Q. Ry.*, 205 U. S. 530, 533, in which it was recognized that a corporation engaged in the solicitation of orders in a district was in fact " doing business " therein, although not in such sense that process could be there served upon it.

We are further of opinion that a corporation is none the less engaged in transacting business in a district, within the meaning of this section—which deals with suits respecting unlawful restraints upon interstate trade—because of the fact that such business may be entirely interstate in character and be transacted by agents who do not reside within the district. And see *International Harvester* v. *Kentucky*, 234 U. S. 579, 587; *Davis* v. *Farmers Co-operative Co.*, 262 U. S. 312, 316.

Thus construed, this section supplements the remedial provision of the Anti-Trust Act for the redress of injuries resulting from illegal restraints upon interstate trade, by relieving the injured person from the necessity of resorting for the redress of wrongs committed by a non-resident corporation, to a district, however distant, in which it

resides or may be "found"—often an insuperable obstacle—and enabling him to institute the suit in a district, frequently that of his own residence, in which the corporation in fact transacts business; and bring it before the court by the service of process in a district in which it resides or may be "found."

To construe the words "or transacts business" as adding nothing of substance to the meaning of the words "or is found," as used in the Anti-Trust Act, and as still requiring that the suit be brought in a district in which the corporation resides or is "found," would to that extent defeat the plain purpose of this section and leave no occasion for the provision that the process might be served in a district in which the corporation resides or is found. And we find nothing in the legislative proceedings leading to its enactment which requires or justifies such a construction.

That Congress may, in the exercise of its legislative discretion, fix the venue of a civil action in a federal court in one district, and authorize the process to be issued to another district in which the defendant resides or is found, is not open to question. *United States* v. *Union Pacific R. R. Co.,* 98 U. S. 569, 604; *Robertson* v. *Labor Board,* 268 U. S. 619, 622.

And, since it appears from the facts already stated that the defendant, in a continuous course of business, was engaged, not only in selling and shipping its goods to dealers within the Georgia district, but also in soliciting orders therein through its salesmen and promoting the demand for its goods through its demonstrators for the purpose of increasing its sales, we conclude that it was transacting business in that district, within the meaning of § 12 of the Clayton Act, in such sense as properly established the venue of the suit; that it was duly brought before the court by the service of process in the New York district, in which it resided and was "found"; and that its jurisdictional defenses were rightly overruled.

2. On the question whether the defendant's refusal to sell its goods to the plaintiff at dealers' discounts was in furtherance of a purpose to monopolize and constituted an actionable wrong, the defendant contends not only that there was no direct evidence as to the purpose of such refusal overcoming the presumption that it was a lawful one, but that such refusal was justified by the fact that the plaintiff had previously undertaken to handle the goods of another manufacturer under a preferential contract. Aside from the plaintiff's contention that this contract related merely to goods that did not conflict with the sale of those which it had been purchasing from the defendant, it was not shown that the defendant knew of this contract when it refused to sell its goods to the plaintiff. And for this reason, if for no other, we think that the trial court rightly declined to charge the jury to the effect that such taking over of other goods by the plaintiff in itself justified the defendant in its refusal to sell to the plaintiff. And, although there was no direct evidence—as there could not well be—that the defendant's refusal to sell to the plaintiff was in pursuance of a purpose to monopolize, we think that the circumstances disclosed in the evidence sufficiently tended to indicate such purpose, as a matter of just and reasonable inference, to warrant the submission of this question to the jury. " Clearly," as was said by the Court of Appeals, " it could not be held as a matter of law that the defendant was actuated by innocent motives rather than by an intention and desire to perpetuate a monopoly." This question was submitted under proper instructions. And the weight of the evidence being in such case exclusively a question for the jury, its determination is conclusive upon this question of fact. *Crumpton* v. *United States,* 138 U. S. 361, 363; *Anvil Mining Co.* v. *Humble,* 153 U. S. 540, 554. And see *Johnson* v. *United States,* 157 U. S. 320, 326; *Goldman* v. *United States,* 245 U. S. 474, 477.

3. On the question of the amount of damages, there was substantial evidence to the effect that prior to 1910 the plaintiff had an established business in selling supplies used by professional photographers, of which it carried a complete line, purchased in large part from the defendant; that the defendant sold to dealers such supplies only; that shortly before the defendant's refusal to continue the sale of its goods the plaintiff also took on a complete line of goods used by amateurs, which did not conflict with its sales to professional photographers; that after the defendant's refusal, the plaintiff was unable, by reason of the defendant's monopoly, to obtain and supply the greater part of the goods necessary to professional photographers, and lost its established trade in such goods; that its trade with professional photographers greatly decreased; and that its business was so organized that it would have been able to continue to handle the defendant's goods during the period in suit with no increase in its general expenses and no additional cost except that incident to the handling of such goods themselves—its business being operated during such period at only two-thirds of its capacity. The plaintiff's claim was that under these circumstances it was entitled to recover, as the loss of profits which it would have realized had it been able to continue the purchase of defendant's goods, the amount of its gross profits on the defendant's goods during the four years preceding the period in suit, which was shown, less the additional expense which it would have incurred in handling the defendant's goods during the four years' period in suit, which was estimated.

The defendant—while conceding that the loss of anticipated profits from the destruction or interruption of an established business may be recovered where the amount of the loss is made reasonably certain by competent proof, *Central Coal & Coke Co.* v. *Hartman* (C. C. A.), 111 Fed. 96, 98—contends that there was a lack of com-

petent proof of such damages in that the profits earned by the plaintiff during the preceding four years in which it had been a customer of the defendant, were improperly used as a standard by which to measure the damages sustained by the plaintiff during the period covered by the suit, since during such preceding years it had participated in the defendant's unlawful acts in furtherance of the monopoly and was *in pari delicto.*

There was, as stated by the Court of Appeals, evidence from which the jury could justly reach the conclusion that the plaintiff was not a party to the monopoly *in pari delicto* with the defendant, and that the plaintiff had complied with the defendant's restricted terms of sale merely for the reason that otherwise it could not purchase or secure the goods necessary in the conduct of its business. There was also affirmative evidence, not contradicted, tending to show that under the defendant's restricted terms of sale the dealers' profits did not exceed those on the sale of goods of other manufacturers not parties to the monopoly.

The jury was instructed, in substance, that if, during the preceding period in which the plaintiff had been a customer of the defendant, it had not merely bought goods from the defendant because of a business necessity, but, with a knowledge of the defendant's purpose to monopolize, had knowingly and willfully helped to build up the monopoly, it was *in pari delicto,* and hence could not recover any damages whatever on account of the defendant's refusal to continue to sell it goods; and, further, that even if the plaintiff had not been a party to the monopoly, it could not recover damages on the basis of the profits which it had earned while a customer of the defendant to the extent that they had been increased by the monopoly and exceeded those in a normal business, but that they must be reduced to the basis of normal profits.

We find, under the circumstances of this case, nothing in these instructions of which the defendant may justly

complain. See *Ramsay Co.* v. *Bill Posters Assn.*, 260 U. S. 501, 512. The statement in *Victor Talking Mach. Co.* v. *Kemeny* (C. C. A.), 271 Fed. 810, 819, on which the defendant relies was based on the assumptions that the plaintiff had not only been a party to the unlawful combination, but that his earlier profits had exceeded those which "he could earn lawfully in a competitive market." And in *Eastman Kodak Co.* v. *Blackmore* (C. C. A.), 277 Fed. 694, 699, the substance of the holding was that the profits made by the plaintiff during an earlier period ending in 1902, in which he had actively participated in the unlawful combination, could not be set up as the standard of the profits which he would have realized in a much later period commencing in 1908.

The defendant further contends that, apart from this question the plaintiff's damages were purely speculative, not proved by any facts from which they were logically and legally inferable, and not of an amount susceptible of expression in figures, *Keogh* v. *C. & N. W. Ry. Co.*, 260 U. S. 156, 165. In support of this contention it is urged in argument, *inter alia*, that there was no showing as to the separate cost of handling the defendant's goods during the preceding four years; that if the plaintiff's entire business be considered as a unit and the total expenses and costs of goods be deducted from the entire receipts, it is shown to have had a net loss in the two years preceding 1910, but to have made a substantial net profit in that and the succeeding year; that the estimate as to the additional expense which the plaintiff would have incurred in handling the defendant's goods during the period in suit, was purely conjectural and speculative; and that it was a mere assumption, discredited by the testimony, that the plaintiff could have sold as large a quantity of the defendant's goods during the period in suit, after taking over a line of other goods, as it had before.

As to this question the Court of Appeals—after stating that in its opinion the plaintiff's evidence would have sup-

ported a much larger verdict than that returned by the jury—said: " The plaintiff had an established business, and the future profits could be shown by past experience. It was permissible to arrive at net profits by deducting from the gross profits of an earlier period an estimated expense of doing business. Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate." This, we think, was a correct statement of the applicable rules of law. Furthermore, a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible. *Hetel* v. *Baltimore & Ohio R. R.,* 169 U. S. 26, 39. And see *Lincoln* v. *Orthwein* (C. C. A.), 120 Fed. 880, 886.

We conclude that plaintiff's evidence as to the amount of damages, while mainly circumstantial, was competent; and that it sufficiently showed the extent of the damages, as a matter of just and reasonable inference, to warrant the submission of this question to the jury. The jury was instructed, in effect, that the amount of the damages could not be determined by mere speculation or guess, but must be based on evidence furnishing data from which the amount of the probable loss could be ascertained as a matter of reasonable inference. And the question as to the amount of the plaintiff's damages having been properly submitted to the jury, its determination as to this matter is conclusive.

The judgment is accordingly

*Affirmed.*