**GASOLINE PRODUCTS CO., Inc., v. CHAM-PLIN REFINING CO.**

**CHAMPLIN REFINING CO. v. GASOLINE PRODUCTS CO., Inc.**

Nos. 2415, 2416.

Circuit Court of Appeals, First Circuit.

April 7, 1930.

Rehearing Denied May 21, 1930.

522

Robert Hale, of Portland, Me., and John B. Marsh, of New York City (Verrill, Hale, Booth & Ives, of Portland, Me., and Taylor, Blanc, Capron & Marsh, of New York City, on the brief), for Gasoline Products Co., Inc.

Harry O. Glasser and Horace G. McKeever, both of Enid, Okl. (William S. Linnell, Carl C. Jones, and Bradley, Linnell & Jones, all of Portland, Me., McKeever, Elam & Stewart, of Enid, Okl., and Emery O. Beane and Beane & Beane, all of Augusta, Me., on the brief), for Champlin Refining Co.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

On a new trial held pursuant to the decision of this court in 29 F.(2d) 331, the amount due the plaintiff for royalties was stipulated, with interest reckoned to April 30, 1929, as $61,530.56. There never was controversy concerning the royalties. The case was tried at length under the defendant's amended counterclaim, in which damages were alleged amounting to $302,316.55. On the issues set up in this counterclaim, the jury found for the defendant, that a con-

tract for the treating towers was made and broken, and assessed the damages for plaintiff's breach at $40,980.59, resulting in a net verdict of $20,549.97 for the plaintiff. Both parties appealed on questions arising under the counterclaim.

The plaintiff's first assignment is to the court's refusal to direct a verdict for the plaintiff, on the defendant's claim in set-off, on the ground that there was no evidence, for the jury, to support such contract. This may be briefly disposed of. The facts as to the dealings between the parties are stated in substantial length in the former opinion of this court, and need not here be repeated. It is enough now to note that we find in this record no new evidence controlling the fair inferences from the evidence in the former record, substantially repeated at the second trial. In fact, there is more evidence supporting the existence of such a contract as defendant asserts. So far as there is conflict, the question was, of course, for the jury. The questions of the existence and breach of the contract alleged in the counterclaim were plainly for the jury.

In outline, the jury's verdict settled that the transaction, although involving separate contracts for the cracking plant and the treating towers (purifying plant), was an integral, single transaction; that the defendant acquired from the plaintiff the necessary rights to have both the Cross cracking plant and the Cross vapor phase system. Clearly, also, the jury must have rejected the plaintiff's view of the valuelessness of the treating tower for the contemplated purpose (purifying the cracked gasoline) involved in the following excerpt from the court's charge:

"Well, now, if it was no good and he" (i. e., the defendant) "did not have it, he could not have suffered any loss for not having the use of it."

It is plain, from the whole course of the dealings between the parties, that the plaintiff's undertaking was to furnish means for the defendant to make an increased part of its crude oil marketable in order that it might thereby derive profits. The defendant's claim for damages falls, therefore, within those cases which hold that, if profits were in the contemplation of the parties, and there is shown some rational basis for determining such profits, they may be recovered as damages. Central Coal & Coke Co. v. Hartman (C. C. A.) 111 F. 96; Bishop-Babcock-Becker Co. v. Estes Drug Co., 63 Okl. 117, 163 P. 276; Stearnes Co. v. Robins, 114 Okl. 156, 245 P. 63; Gagnon v. Sperry & Hutch-

inson Co., 206 Mass. 547, 92 N. E. 761; Armstrong v. Bangor Mill Supply Corp., 127 Me. 194, 142 A. 734; Id., 128 Me. 75, 145 A. 741; Waukeag Ferry Assoc. v. Arey, 128 Me. 108, 146 A. 10; Eastman Kodak Co. v. Southern Photo Materials Co., 273 U. S. 359, 47 S. Ct. 400, 405, 71 L. Ed. 684.

It follows that the plaintiff's assignments 2 to 6 are without merit; the case was for the jury in all its aspects. The judgment must be affirmed, unless there was reversible error on some point of law affecting the jury's verdict on damages.

■ Defendant's main contention was that the plaintiff was obligated to furnish it an adequate purifying system contemporaneously with the cracking system. The cracking system was completed about September 20, 1926, and put in immediate and successful operation. Plaintiff furnished no purifying system. Consequently, the defendant was required to supply itself with a substitute therefor. It contends that it did that, with proper promptness and efficiency, and got its substitute ready to use about February 20, 1927.

Its main claims for damages, then, are the excess cost of its substitute system, about $32,000, plus the profits it reckons it would have made in the period from September 20 to February 20. These profits are figured in detail by defendant's auditor in Exhibit 61 at $179,459.14.

Plaintiff challenged the defendant's evidence on damages at practically every point. It stoutly claimed that the defendant did not seasonably and efficiently take steps to minimize the damage done by the breach of contract relied upon. Plainly, there was evidence warranting the view that in August, 1926, the defendant ought to have known that the plaintiff intended to deny any obligation to furnish the Cross purifying system, and that defendant must take proper steps for a substitute. Yet it did nothing effective as to supplying a substitute system until late September or October, and still later changed its plans. It had, as already noted, no substitute system ready for operation until February 20, 1927. The plaintiff also offered evidence that other methods or processes than the one actually adopted by defendant were available for purifying, and might have been installed much earlier than February, 1927. The jury were fully warranted in cutting down the time, during which the defendant was entitled to claim lost profits as damages, to much less than the five-month period used by defendant's auditor in the elaborate computation, Exhibit 61. Plaintiff also attacked other aspects of defendant's computation of lost profits.

We observe, generally, that the amount of defendant's damage was peculiarly a question of fact for the jury, to be determined on very conflicting evidence. It is not surprising that the jury found no persuasive case made out for damages approximating the defendant's claim of over $300,000. On the other hand, it is equally clear that the defendant did, on the weight of evidence, make out a claim for a substantial sum of lost profits as damages.

■■ The defendant alleges prejudicial error in the instruction to the jury, "That to have any damages they must be such as are not in any degree uncertain, speculative, contingent or conjectural."

This ruling was made at least twice. Near the close of the long charge the court read to the jury the defendant's seventh request, as follows:

"If you find for the defendant, in accordance with the instructions previously given you, I instruct you that defendant is entitled to recover all the damages which are the natural and probable consequence of plaintiff's breach of contract, and all damages which the parties should reasonably anticipate would result from a breach of contract by the plaintiff, and in this respect I instruct you that the defendant would be entitled to recover all the profits which it lost by reason of plaintiff's breach of contract, if you find that profits were in the contemplation of the parties when the contract was entered into and that the profits claimed are not remote nor speculative but are capable of reliable measurement, that is, can be ascertained by you with a reasonable degree of certainty."

He then added:

"That is in substance what I have already told you, and, further, I will instruct you that they must be in no degree conjectural. That word was omitted from the instruction."

After the jury had been out for some hours, they returned and asked for further instructions on damages. In complying, the court said, inter alia:

"Now there is one important feature of the rule that applies all along the line in all cases. That is, that to have any damages they must be such as are not in any degree uncertain, speculative, contingent, or conjectural."

The jury were thus, after they had indicated their general conclusion in favor of the defendant, emphatically told that *any degree of uncertainty* would cut off the defendant's claims for damages. Under such circumstances, we cannot say the jury were not misled. Only *reasonable* certainty is requisite. 1 Sedgwick, Damages (9th Ed.) § 176. The seventh request was a correct statement of the law. In Eastman Kodak Co. v. Southern Photo Co., ubi supra, the Supreme Court approved this instruction:

"Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate."

Compare Malone v. Hastings (C. C. A.) 193 F. 1; Central Coal & Coke Co. v. Hartman, ubi supra. The verdict of only $40,980.59 cannot, on the evidence, be reconciled with any very substantial allowance of profits.

The defendant also complains that the court disallowed its claim for interest on its damages.

Undoubtedly, the general rule is that interest is not allowed on unliquidated damages; but, on the other hand, "When necessary in order to arrive at fair compensation, the court in the exercise of a sound discretion may include interest or its equivalent as an element of damages." Miller v. Robertson, 266 U. S. 243 at page 258, 45 S. Ct. 73, 78, 69 L. Ed. 265, and cases cited. See, also, Barrett Co. v. Panther Rubber Mfg. Co. (C. C. A.) 24 F.(2d) 329, 337, and cases cited. The ruling against any allowance of interest was broad and general.

The plaintiff's claim is for an undisputed amount of royalties. The defendant claims in set-off the excess cost of its substitute purifying plant, as stated above, and a large amount of lost profits; it withheld payment of substantial amounts of admittedly due royalties, pending the determination of the amount of its claim in set-off. Consequently, the plaintiff has collected, or now gets judgment for, a large amount of interest on the undisputed amount of royalties due.

We think that the jury should have been instructed to allow interest on any excess cost of any substitute purifier, which the jury found as an element of damages, from the date when the substitute purifier was furnished or should have been furnished (St. Paul Fire & Marine Ins. Co. v. Robison, 72

Okl. 269, 180 P. 702); and also might, in their discretion, in order to do full justice between the parties, allow interest on any amount of lost profits which they found due the defendant by reason of plaintiff's breach of contract.

We find no other assignment calling for discussion.

The result is:

The judgment of the District Court is vacated, and the verdict is set aside only as to damages and the case is remanded to that court for a new trial on the question of defendant's damages, with costs to the Champlin Refining Company.

WILSON, Circuit Judge.

I concur in the reasons for sending this case back for further hearing on the question of the defendant's damages, but do not care to be understood as thereby approving the view that the defendant's claim is a proper account in set-off under section 75 of chapter 87 of the Maine Statutes (Rev. St. 1916).