**RESERVE PLAN, INC., Plaintiff,**

v.

**ARTHUR MURRAY, INC., et al.,**
**Defendants.**

**No. 12701–1.**

United States District Court
W. D. Missouri, W. D.

July 9, 1969.

Roy P. Swanson, and Richard K. Andrews, of Swanson, Midgley, Jones, Eager & Gangwere, Kansas City, Mo., for plaintiff.

William H. Curtis, of Morrison, Hecker, Cozad, Morrison & Curtis, Elton L. Marshall, Allan L. Bioff, and Landon H. Rowland, of Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendants.

## MEMORANDUM OPINION AND ORDER

JOHN W. OLIVER, District Judge.

### I.

In accordance with the opinion, 406 F.2d 1138, and mandate of the Court of Appeals, we have recomputed plaintiff's damages and direct the entry of a new judgment. That recomputation has been made in accordance with the views expressed in the Court of Appeals opinion and upon the record made at trial.

We have, once again, carefully reviewed all the record evidence and have considered the briefs of the parties filed both before and after oral argument. We now state the reasons which we believe support our recomputation.

### II.

The parties continue to take radically different views of the damage issue. Plaintiff contends that the initial $697,500 judgment and $40,000 award of attorneys' fee should be recomputed in a manner that would reduce the judgment to $600,900 and the attorneys' fees to $37,900. Both defendants contend that the judgment should be reduced to $114,849 and the attorneys' fees to $27,550.

For different purposes, counsel for both sides suggest that the Court of Appeals either indulged in unjustified assumptions or did not understand the manner in which this Court originally computed plaintiff's damages.[1]

---

1. Plaintiff, for example, suggests that "the Court of Appeals may have indulged in an unjustified assumption" in regard to this Court's treatment of the executive salary expense item (Plaintiff's April 4, 1969 brief, page 3, footnote 1). In like manner, defendant Arthur Murray, on page 7 of its May 19, 1969 brief, sug-

This Court does not share counsels' doubts about the Court of Appeals' understanding of the rationale of this Court's original computation of damage. Judge Mehaffy appropriately stated that this Court, "cued by our opinion [in 364 F.2d 28] * * * adopted the approach approved by the Supreme Court in Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927), and from all of the record evidence arrived at an amount which it concluded was fair and just." That is exactly what this Court did and the opinion of the Court of Appeals demonstrates that it considered the appeal on that basis.[2]

■ Computation of damages in accordance with the method approved in *Eastman Kodak* is not, as recognized by both this Court and the Court of Appeals, an exact science. It is apparent, however, even to the uninitiated, that either a reduction in the gross income or an increase in the estimated expenses must result in an ultimately lower damage figure.

So far as this case is concerned, it is clear that the Court of Appeals agreed with defendants' general contention that the damages originally computed by this Court were too high. Defendants, however, would stretch what the Court of Appeals said in its second opinion to justify a reduction of plaintiff's damages to an amount which would indicate that some sort of fundamental error had

been made in this Court's original computation which was made pursuant to the method initially approved by the Court of Appeals in its first opinion in this case. We cannot agree with defendants' construction of the Court of Appeals' second opinion any more than we can agree with the plaintiff's contention that the Court of Appeals contemplated that our recomputation would result in only a relatively minor reduction of the amount of damages originally computed.

We look first to the Court of Appeals' discussion and treatment of our initial finding that the annual gross income from the Arthur Murray business was $120,000.

### III.

Although the Court of Appeals determined that "there is ample evidence to support the court's finding that the annual discount income attributable to Arthur Murray's accounts was approximately $120,000.00" [406 F.2d at 1147], its opinion made clear that it wanted to be certain that this Court had in fact taken into consideration all the record evidence concerning "the deferred discount income which plaintiff received from AMI accounts during * * * the three-year, ten month period for which it was awarded damages." [406 F.2d at 1141]. We were accordingly directed to "re-examine the record evidence, including the exhibits, in order to ascertain whether an adjustment should

gests that a closing portion of the Court of Appeals opinion "reflects a basic misunderstanding of the manner in which plaintiff's damages were computed by the trial court."

2. At the time we originally computed the damages in this case, the Court of Appeals had not decided Dean Foods Company v. Albrecht Dairy Company, (8 Cir. 1968) 396 F.2d 652. *Dean Foods Company* ruled the damage question there involved solely on the authority of Eastman Kodak Co. of New York v. Southern Photo Materials Co., *supra*; Story Parchment Company v. Paterson Parchment Company, 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); and Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251,

66 S.Ct. 574, 90 L.Ed. 652 (1946). See 396 F.2d at 660–661. The Court of Appeals' reliance in this case upon *Dean Food Company*, decided by the same panel which heard this case, demonstrates that this Court properly refused to read earlier Eighth Circuit cases, such as Siegfried v. Kansas City Star, (8 Cir. 1962) 298 F.2d 1; National Wrestling Alliance v. Myers, (8 Cir. 1963) 325 F.2d 768; McCleneghan v. Union Stock Yards of Omaha, (8 Cir. 1965) 349 F.2d 53, and American Infra-Red Radiant Co. v. Lambert Industries, (8 Cir. 1966) 360 F.2d 977, as establishing any rule of proof of damages any more strict than that articulated by the Supreme Court of the United States cases to which the Court of Appeals made reference in its first opinion in this case.

be made in the amount of income from A.M.I. accounts * * * [and] to make the adjustments necessary, if any, in the recomputation of damages" [406 F.2d at 1150–1151].

■ We have complied with that direction and have ascertained that no adjustment should be made in the $120,000 income figure. The Court of Appeals' careful and detailed study of the record in this case prompted its recognition that reliance upon a single exhibit or set of exhibits in this complex case could well distort a fair evaluation of all the relevant facts and circumstances.[3] The Court of Appeals, however, directed particular attention to plaintiff's Exhibit 67 which apparently showed that "the amount of discount income received by plaintiff on its Arthur Murray installment contracts for the fiscal year ending July 31, 1957 was $57,-241.36" [406 F.2d at 1148]. We are confident that we gave that exhibit the attention it deserved.

The record shows that what eventually was introduced as plaintiff's Exhibit 67 was one of the plaintiff's exhibits which had been "hurriedly prepared" [406 F.2d at 1146]. Indeed, it was prepared the very day that plaintiff's president took the stand on the damage issue to illustrate the income tax consequences of plaintiff's accounting procedures. Plaintiff's counsel explained that the letter "simply confirms the figures that I want him to testify about as to what happened in 1956 and 1957, with regard to his income being taken up, even though he had lost the Arthur Murray business" [R. 531].

We commented at the time reference was first made to the letter it simply stated an isolated figure [R. 531]. Plaintiff's counsel did not even attempt to introduce the letter in evidence until the next day [R. 599]. Plaintiff's counsel made clear at that time that the reason he wanted to put the letter in evidence was because the "information" was not contained in the audit reports [as the Court of Appeals tentatively assumed, see 406 F.2d at 1148] but was from the working papers of the accountants [R. 599]. Those working papers were never introduced in evidence and the exhibit, while admitted in evidence over defendants' objections, was not considered by this Court to be sufficiently reliable or understandable to be given any particular weight.

We believe that the most that can be said concerning Exhibit 67 is that the figure stated was related to the amount of income reported for tax purposes in the year 1957 under plaintiff's deferred discount accounting method and that such exhibit reflects but another facet of why, to use the Court of Appeals' language, "income tax exhibits [are] meaningless insofar as computing damages in this case is concerned" [406 F.2d at 1147].

This is not to say that we were not cognizant of the fact that plaintiff in fact did receive a lesser amount of Arthur Murray income during 1957 and the other pertinent damage periods involved in our computation of damages. That income is shown in the various annual audits in evidence. We took that receipt of such income into account in our original computation in arriving at the $120,000 income figure. Because such income was so considered by this Court initially, and because the Court of Appeals has determined that our finding in regard to the $120,000 figure was not only not clearly erroneous but was in fact supported by the evidence, we shall not make any adjustment in the $120,000 income calculation.

We turn now to the executive salary question.

---

3. Judge Mehaffy noted, as an example, that "[a]t first blush, it would appear to any court that the award of damages in this case when equated with the income tax returns is inordinate" [406 F.2d at 1147]. "[B]ut," he continued, "we learn from other evidence which is without dispute * * * combined to make the income tax exhibits meaningless insofar as computing damages in this case is concerned" [406 F.2d at 1147].

## IV.

The Court of Appeals held that "the district court erred in failing to include in plaintiff's expenses any part of the executive salary in its handling of the A.M.I. business which we think should have been considered and added to plaintiff's expenses in order to properly compute the amount of damages." [406 F. 2d at 1141].

Although the Court of Appeals left the determination of what part of plaintiff's president's executive salary should be included as an expense item to the exercise of this Court's judgment, it indicated, we believe significantly, that "a *substantial* part of Mr. Hart's salary * * * is properly chargeable" [404 F.2d at 1149].

The example stated in the Court of Appeal's opinion contemplated the charging of an amount of plaintiff's president's executive salary in proportion to the ratio that A.M.I.'s business bears to plaintiff's total business. Utilization of that formula would, according to calculations made by plaintiff which are not contested by defendants, call for the allocation of an amount in excess of the $8,400 suggested by plaintiff.

We do not believe, however, that the Court of Appeals meant for this Court to accept the stated example as a direction to recompute plaintiff's damages in accordance with the mathematical calculation involved in its example. That calculation could easily have been made by the Court of Appeals without a remand of the case. We are therefore convinced that the example was stated by the Court of Appeals to let this Court know that any allocation of a portion of Mr. Hart's salary less than that which the mathematics of the example produced would not, under any circumstance, be considered by that Court as an allocation of a "substantial" part of Mr. Hart's salary.

On the other hand, we are also convinced that the Court of Appeals did not intend for this Court blindly to use any mathematical result which might be produced by its example as either an absolute "floor" or as an absolute "ceiling" in regard to what should be considered an appropriate portion of Mr. Hart's salary to be charged as an expense item in this Court's recomputation of plaintiff's damages. What might, for example, be considered as a "substantial" portion of Mr. Hart's salary if this Court had readjusted the $120,000 income figure, might not fairly be considered a "substantial" portion if this Court, as it has, refused to make any adjustment in that income figure.

The general thrust of the Court of Appeals' opinion strongly intimates that the "substantiality" of the portion of Mr. Hart's executive salary to be added as an expense item is not unrelated to whether or not this Court decided to readjust the $120,000 income figure.

If, on remand, we had adjusted the $120,000 estimated income figure to a lower figure, perhaps a reasonably strong case could have been made for plaintiff's contention that only $8,400 of Mr. Hart's salary should be added as an expense item. Under that circumstance a proportionate reduction of all other estimated expense was contemplated by the Court of Appeals.[4] Since the $120,000 figure was not reduced, we find that plaintiff's suggested addition of only $8,400 of Mr. Hart's executive salary is not a "substantial" portion of that salary, within the meaning of the Court of Appeals decision.

Defendants' suggestions in regard to Mr. Hart's salary are totally unrealistic. They make all sorts of calculations based on the notion that Mr. Hart's executive salary is somehow "historically" related to profits before salary and that the "portion" of his salary to be added as an expense item should be $47,844. There

---

4. Judge Mehaffy stated that if the district court should adjust the estimated income figure downward, "then, of course, the annual expenses for handling the additional business would necessarily be reduced proportionately" [406 F.2d at 1148].

is no evidence in the record to support defendants' "historical" analysis. The $47,844 figure suggested is substantially in excess of the total salary ever paid Mr. Hart in any year plaintiff has been in business. Indeed, the highest salary ever paid Mr. Hart, $40,402.58, was in 1954. In no other year was he ever paid in excess of $38,692.43 (in 1959).

Defendants' effort to tie Mr. Hart's salary to plaintiff's profits is not dissimilar from their argument that the damages awarded in this case will have the result of producing greater profits in the damage years than plaintiff ever made before or after this treble damage antitrust action was successfully maintained. Such arguments are routinely and consistently made in all treble damage antitrust actions. Those arguments are untenable because they ignore the established public interest enforcement principle which underlies the assessment of treble damages in all private antitrust actions. Such arguments ignore the basic principle of *Eastman Kodak* quoted by the Court of Appeals in this case that "a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible" [273 U.S. at 379, 47 S.Ct. at 405, 71 L.Ed. 684].

For the reasons we have stated, we (a) reject plaintiff's contention that only $8,400 of Mr. Hart's salary should be added to the expense estimate; and (b) we likewise reject defendants' contention that $47,844 should be considered as a "portion" of Mr. Hart's salary, and, when so considered, added as an item to the estimated expense figure. We now make our independent determination in accordance with the rationale and direction of the Court of Appeals' opinion.

## V.

The Court of Appeals' expressly approved "the method utilized by the district court in computing damages" [406 F.2d at 1141]. We therefore follow again that method but correct our error "in failing to include in plaintiff's expenses any part of the executive salary" [406 F.2d at 1141]. It is our duty to follow the Court of Appeals' specific direction that we add "a substantial part of Mr. Hart's salary * * * as an expense item in computing plaintiff's net income from AMI business" [406 F.2d at 1149].

Consistent with the method approved by the Court of Appeals, we find that the average salary paid Mr. Hart for the 1954–1955 period was $32,421.29 ($40,402.58 in 1954 and $24,440.00 in 1955; see DX 106). That figure is approximately $2,000 more than the average salary paid Mr. Hart in any of the damage years. Obviously, the average salary paid in the 1954–1955 period is a realistic and conservative figure to take as a point of beginning.

The Court of Appeals determined that quite practical recognition should and must be given to the fact the business involved in this case is a "particularly high risk business * * * that takes great expertise for a profitable operation." It also noted that "businesses such as this do not succeed except under the guidance and administration of someone knowledgeable in the field." That someone, the Court of Appeals decided, is Mr. Hart.

The determination of what portion of the average $32,500 executive salary should be determined to be a "substantial" portion cannot be calculated with the slide rule to which the Court of Appeals opinion made reference. See 406 F.2d at 1146. The Court of Appeals' recognition that "there is no possible way to compute to a mathematical certainty an amount of damages—fair, reasonable, and supported by the evidence," underlines the fact that in determining what is a "substantial" portion of Mr. Hart's salary we must exercise our best judgment rather than attempt any precise

mathematical calculation.[5] We believe that the Court of Appeals wanted this Court to again carefully review all of the facts and circumstances in the record and, as that Court explicitly stated, "to make a fair judgment on this item" in light of the Court of Appeals' opinion [406 F.2d at 1149].

■ We have therefore made that judgment in light of the Court of Appeals' statements in regard to the importance of Mr. Hart's expertise and the plaintiff's loss of Mr. Redhair, who was hired away from plaintiff by one of the defendants. Giving appropriate weight to those factors and to all the other facts and circumstances of record, we have concluded $22,500, a figure substantially more than fifty per cent of Mr. Hart's salary, should be added as an item of the estimated expense.

We make that finding fully cognizant of the fact that the portion of Mr. Hart's salary to be added to the expense estimate is considerably more than 50% of what he actually drew in salary during the damage period. We make that finding cognizant of the fact that "the Arthur Murray business was plaintiff's most profitable business * * * and that plaintiff actually lost money on dentist accounts and others," [406 F.2d at 1147], all of which might be said to support the idea that less rather than more executive time would be spent on the former than the latter. We believe, however, that we are duty bound to give appropriate weight to the Court of Appeals' determination that plaintiff's business simply could not succeed except under the guidance and administration of Mr. Hart. We have therefore rounded off roughly two thirds of Mr. Hart's average salary to be added as an expense item. When checked against what Mr. Hart was actually paid in all the damage years ($24,583.64 in 1956, $32,967.10 in 1957, $25,020.16 in 1958, and $38,692.43 in 1959) it is apparent that our final figure is approximately 75% of the average salary ($30,315.83) actually paid Mr. Hart in the damage years. We believe that such a figure must be said to be a substantial portion of Mr. Hart's salary under the facts and circumstances.

It is our judgment, based upon a careful review of all the facts and circumstances in the record, and based upon what we believe is an appropriate application and balance of all the factors stated in the opinion of the Court of Appeals, that $22,500, an amount which we find to be a substantial portion of Mr. Hart's executive salary, should be added to our prior estimate of the cost of handling the additional estimated income of $120,000. That finding requires that our prior estimate of $60,000 as the cost of handling the estimated additional income of $120,000, be increased to $82,-500 and that the damages accordingly be recomputed on that basis.

## CONCLUSION

We find and determine that no adjustment should be made in the estimated income figure of $120,000; that the sum of $22,500, the portion of Mr. Hart's salary found to be substantial, when added to our prior estimate of $60,000, make a combined amount of $82,500 expense to be subtracted from $120,000 annual discount income attributable to the A.M.I. business; that, pursuant to the recomputation directed by the Court of Appeals, plaintiff's annual loss of future profits must be said to equal $37,500 per year;

5. One could, we suppose, with a degree of apparent consistency, say that the 50-50 formula should be applied to the allocation of Mr. Hart's salary and that therefore only 50% of the $32,500 average salary should be added as an expense item. Our reading of the Court of Appeals' opinion suggests, however, that such an easy solution must have been considered and rejected by the Court of Appeals. We believe that if the application of some sort of formula would have solved the problem presented, this case would not have been remanded for this Court for it to make what would have been a mere mathematical calculation. The Court of Appeals could have quite easily made such a calculation and directed entry of an appropriate modified judgment.

that the damages up to the time of filing suit, three years and ten months after the taking, would therefore equal $143,750; that plaintiff is also entitled, as affirmed by the Court of Appeals, to $2,500 for the Arthur Murray coupon books; so that plaintiff's total damage, as recomputed, equals $146,250. That sum, of course, must be trebled in accordance with the applicable law so that final judgment shall accordingly be entered for $438,750.

Attorneys' fees shall be adjusted in accordance with the agreement of the parties. The judgment shall also provide for a $600 allowance to Special Master John P. Miller. Counsel for the plaintiff shall within two (2) days prepare and submit to opposing counsel for approval as to form and thereafter present to the Court an appropriate form of final judgment reflecting the recomputation of damages and attorneys' fees made pursuant to the direction of the Court of Appeals.

It is so ordered.