## NAIFEH v. RONSON ART METAL WORKS, Inc.

Civ. A. No. 5669.

United States District Court
W. D. Oklahoma.

March 23, 1953.

492

Foster & Bowen, Oklahoma City, Okl., for plaintiff.

Rainey, Flynn, Green & Anderson, Oklahoma City, Okl., for defendant.

WALLACE, District Judge.

The plaintiff, Z. T. Naifeh, formerly a distributor for the defendant, Ronson Art Metal Works, Inc., brings this action "under the provisions of The Anti-Trust Acts and all amendments thereto."

█ Service was obtained upon a corporate officer at the home office of the defendant in Newark, New Jersey. Inasmuch as Section 12 of the Clayton Act, 15 U.S.C.A. § 22, provides that in a suit brought under the anti-trust laws a corporation "may be served in the district of which it is an inhabitant, or wherever it may be found", doubtless this service of process was effective.[1]

However, related to the question of service, validity is the equally important question of proper venue. Section 12 of the Clayton Act fixes venue to lie in the judicial district where the corporate defendant is an inhabitant or "in any district wherein it may be found or transacts business".

The court conducted a hearing in order to determine whether as a matter of fact the defendant corporation is "transacting business" within this district. From this hearing the court finds:

(1) A representative of the defendant corporation calls on the various distributors in this district some four or five times yearly.

(2) This representative solicits orders for the different products of the defendant which orders are then forwarded to the defendant's home office in Newark, N. J. for acceptance.

(3) This representative exercises a considerable amount of authority in choosing the kind and quantity of the defendant's products which are stocked by the distributors. There is evidence that the individual distributors are required to place orders for unwanted items of the defendant's line before they can obtain those items which are in great demand.

(4) This representative is not vested with the authority to determine who shall get or retain the various distributorships within this district, but he does make persuasive advisory recommendations.

(5) Upon request, the defendant furnishes distributors, including those in this district, with comprehensive advertising materials, display cards and other sales promotion materials.

(6) The defendant furnishes all distributors with salesman's kits made up at the home office. Each kit contains a complete set of samples of the various commodities offered for sale by the defendant.

(7) All advertising is planned at a national level and is actively promoted to reach all consumers, including the consumers in this district.

(8) Approximately four to five times a year the defendant mails its external house organ called "Ronson Sparks" to all its

1. Newmark v. Abeel, D.C.N.Y.1952, 102 F.Supp. 993. Also, see Eastman Kodak Co. v. Southern Photo Material Co., 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684;

United States v. Scophony Corporation of America, 1947, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091.

distributors, including the distributors in this district.

(9) The defendant pays no income or sales tax to the State of Oklahoma; it leases no real estate nor maintains any stock of goods in this district; it maintains no agent upon whom legal process may be served within this district; and it has no solicitors or sales agents living within this district.

■■■ The mere sending of solicitors into a state, who may do nothing but solicit orders, is not "doing business" in such state, as respects *service of process*.[2] Nor do efforts made on behalf of and as an aid to distributors constitute "doing business" within a state so as to subject a foreign corporation to local service of process.[3]

■■■ Doubtless, the defendant corporation is not "doing business" as defined by the many many cases which support the just mentioned principles in relation to local service of process. However, it must be observed that the test under the antitrust acts as to what constitutes "doing business" so as to vest venue is not the same test that determines whether a foreign corporation by its actions has submitted itself to local service of process. The special venue provisions in the antitrust laws were intended as an enlargement of venue and to broaden the choice of forum available in anti-trust actions.[4]

Thus various decisions dealing with just what composes "doing of business" in regard to local service of process although helpful and persuasive, is not conclusive. In determining whether venue in an antitrust action has been established each case must be governed by its own peculiar set of facts; and it is the totality of acts and conduct by the corporation rather than isolated and fragmented items thereof which govern.[5]

In the case at bar, the most analogous case to which we can turn to help resolve this venue question is the case of Eastman Kodak Co. v. Southern Co.[6] wherein the United States Supreme Court found that venue did lie. Although the facts in the Eastman Kodak case are not identical with the facts in the instant case they are highly parallel. As in our case, the defendant corporation sent solicitors into the district who in turn mailed the orders back to the home office for acceptance. The only feature which might be distinguishable is that the Eastman Kodak Company also sent demonstrators into the district to directly promote sales at a local level. In the instant case the defendant corporation although not sending demonstrators does do extensive advertising which reaches the local consumers; and it freely furnishes advertising literature and displays to the distributors within the district, together with furnishing home office prepared salesman's kits containing samples of the defendant's products, which kits in turn are used to promote sales within the district.

Insofar as this court knows the Eastman Kodak case represents the most liberally defined line of what may be deemed to constitute "doing business" under the venue provision of the Clayton Act; and, if it took an enlargement in the slightest degree upon the principle there enunciated to find venue in the instant case this court would not so do.

■■■ However, after a detailed study of the Eastman Kodak case, supra, and the case of United States v. Scophony Corpo-

2. Elgin Laboratories, Inc., v. Utility Mfg. Co., D.C.Ill.1939, 26 F.Supp. 918. Also, see Peoples Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587; Maxfield v. Canadian Pac. Ry. Co., 8 Cir., 70 F.2d 982.

3. Peebles v. Chrysler Corporation, D.C. Mo.1932, 57 F.2d 867; Truck Parts, Inc. v. Briggs Clarifier Co., D.C.Minn.1938, 25 F.Supp. 602. Also, see International Harvester Co. of America v. Com. of Kentucky, 234 U.S. 579, 34 S.Ct. 944,

58 L.Ed. 1479; Peoples Tobacco Co. v. American Tobacco Co., footnote 2 supra.

4. Anderson-Friberg, Inc. v. Justin R. Clary & Son, D.C.N.Y.1951, 98 F.Supp. 75. See Eastman Kodak Co. v. Southern Co. and United States v. Scophony Corporation of America, footnote 1 supra.

5. Abrams v. Bendix Home Appliances, D.C.N.Y.1951, 96 F.Supp. 3.

6. Footnote 1 supra.

494

ration of America,[7] this court believes that the defendant is "doing business" in this district within the meaning of this venue statute.

In the Eastman Kodak case the court said:[8]

"Manifestly the defendant was not present in the Georgia district through officers or agents engaged in carrying on business of such character that it was 'found' in that district and was amenable to the local jurisdiction for the service of process.

"However, by the Clayton Act—which supplemented the former laws against unlawful restraints and monopolies of interstate trade—the local jurisdiction of the district courts was materially enlarged in reference to suits against corporations. * * * And we think it clear that, as applied to suits against corporations for injuries sustained by violations of the Anti-Trust Act, its necessary effect was to enlarge the local jurisdiction of the district courts so as to establish the venue of such a suit not only, as theretofore, in a district in which the corporation resides or is 'found,' but also in any district in which it 'transacts business'—although neither residing nor 'found' therein—in which case the process may be issued to and served in a district in which the corporation either resides or is 'found'; and, further, that *a corporation is engaged in transacting business in a district, within the meaning of this section, in such sense as to establish the venue of a* suit—*although not present by agents carrying on business of such character and in such manner that it is 'found' therein and is* amenable to local process—*if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character.* * * *

"We are further of opinion that *a corporation is none the less engaged in transacting business in a district, within the meaning of this section*—which deals with suits respecting unlawful restraints upon interstate trade—*because of the fact that such business may be entirely interstate in character and be transacted by agents who do not reside within the district.*

\* \* \* \* \* \*

"And, since it appears from the facts already stated that the defendant, in a continuous course of business, was engaged, not only in selling and shipping its goods to dealers within the Georgia district, but also in soliciting orders therein through its salesmen and promoting the demand for its goods through its demonstrators for the purpose of increasing its sales, we conclude that it was transacting business in that district, within the meaning of section 12 of the Clayton Act * * *." (Emphasis supplied.)

Although the actual facts in the United States v. Scophony Corporation case, supra, are sufficiently different from those in our case that little analogy can be found, the language of the case is most beneficial. Mr. Justice Rutledge went into the complete history surrounding the precise point under consideration, and the logic and reasoning in his opinion serve as a polestar. In appraising the Eastman Kodak case Justice Rutledge said:[9]

"This construction gave the words 'transacts business' a much broader meaning for establishing venue than the concept of 'carrying on business' denoted by 'found' under the preexisting statute and decisions. The scope of the addition was indicated by the statement 'that a corporation is engaged in transacting business in a district * * * if *in fact*, in the ordinary and usual sense, it 'transacts business' therein of *any substantial* character.' * * * (Emphasis added.)

"In other words, for venue purposes, the court sloughed off the highly

7. Footnote 1 supra.

8. Footnote 1 supra, 273 U.S. at page 371, 47 S.Ct. at page 403, 71 L.Ed. 684.

9. Footnote 1 supra, 333 U.S. at page 807, 808, 68 S.Ct. at page 861, 92 L.Ed. 1091.

technical distinctions theretofore glossed upon 'found' for filling that term with particularized meaning, or emptying it, under the translation of 'carrying on business.' In their stead it substituted the practical and broader business conception of engaging in any substantial business operations. [Citing cases.] Refinements such as previously were made under the 'mere solicitation' and 'solicitation plus' criteria * * * were no longer determinative. The practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character' became the test of venue.

*   *   *   *   *   *

"Thus, by substituting practical, business conceptions for the previous hair-splitting legal technicalities encrusted upon the 'found'—'present'—'carrying-on-business' sequence, the Court yielded to and made effective Congress' remedial purpose. Thereby it relieved persons injured through corporate violations of the antitrust laws from the 'often insuperable obstacle' of resorting to distant forums for redress of wrongs done in the places of their business or residence. A foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due."

The cases cited by the defendant in its brief supporting its motion to dismiss accent the knotty nature of this problem. However, in reviewing each case relied upon by defendant, the court finds them to be distinguishable from the immediate case.

Truck Parts, Inc. v. Briggs Clarifier Co.[10] involves service of process under the Minnesota statute and has no application to the venue portion of the Clayton Act which unquestionably is distinct in scope. Many of the cases cited in the court's opinion

were expressly referred to by the Supreme Court in the Eastman Kodak case, supra, and were specifically differentiated.

Elgin Laboratories, Inc., v. Utility Mfg. Co.[11] points out the time-honored rule that "Merely sending solicitors into a state, who may do nothing but solicit orders, is not 'doing business' in such state, as respects service of process." Although, again this case did not involve the venue provision of the Clayton Act the court did state an acceptable principle:[12]

"Doing business is not a technical term, having a precise, definite meaning. We are dealing with a practical matter and should, perhaps, concern ourselves with consequences. A corporation, extending its activities over a considerable part of the United States, should not be permitted, through over refinement of terms, to screen itself from suits by those with whom it is dealing, and compel one who has a cause of action against it to travel across the continent to obtain a remedy. If its business is far flung it is not greatly inconvenienced by being compelled to defend in a court sitting in a district far from its main office or principal place of business."

Peebles v. Chrysler Corporation[13] enunciates the rule that the true test of whether a foreign corporation is "doing business" within a state is whether the agent is concluding business transactions as well as soliciting business. The court also held that the fact that the foreign corporation had a soliciting agent in a state aiding distributors and dealers did not constitute "doing business". The court in its opinion cited the International Harvester Co. case and the Peoples Tobacco Co. case as the predicate upon which it rested its decision. Both of these cases were expressly referred to by Justice Rutledge in the Scophony Corp. case and were said to not be proper precedents to follow in testing venue under the Clayton Act.[14]

10. Footnote 3 supra.

11. Footnote 2 supra.

12. Footnote 2 supra, 26 F.Supp. at page 919.

13. Footnote 3 supra.

14. Footnote 1 supra, 333 U.S. at page 807, 68 S.Ct. at page 861, 92 L.Ed. 1091, the court said: " * * * Refinements such

Windsor Theatre Co. v. Loew's, Inc.[15] involves the "booking" of films in the moving picture industry. The fact situation is not sufficiently analogous to our case to give any practical aid.

De Santa v. Nehi Corporation[16] has to do with the application of the New York statute regarding validity of service of process and hence is not applicable.

Cole v. Stonhard Co.,[17] is a case which factually is very similar to the one at bar. However, again this case involves the construction of the New York statute regarding service of process. Even so, the court in its opinion indicated just how close the foreign corporation had come to submitting to local jurisdiction when the court said:[18]

"* * * Although many equities may be with the plaintiff, and the defendant is walking a tightrope of immunity, under the facts here it would be a dangerous door for me to open."

In the case at bar a representative of the defendant solicits orders systematically within this district, and in addition exercises a considerable amount of authority in determining just what commodities of the defendant the distributors shall stock. The defendant furnishes the distributors in this district with advertising materials, display cards and other sales promotion materials, and furnishes salesman's kits which are made up at the home office; these kits contain a complete assortment of the various commodities offered for sale by the defendant. Although advertising is planned on a national basis it is beamed to reach the consumers in this district. In addition the distributors are kept closely advised on company policies and product development through the regular distribution from the home office of the external house organ "Ronson Sparks."

Dispensing with the legal niceties which long have enshrouded the phrase "doing business" it seems apparent that the defendant is engaged in this district in, "The practical, everyday business or commercial concept of doing or carrying on business" of a substantial character.[19]

Motion to dismiss for lack of venue is hereby denied.

as previously were made under the 'mere solicitation' and 'solicitation plus' criteria, cf. Frene v. Louisville Cement Co. [77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926], and like those drawn, e. g., between the People's Tobacco and International Harvester cases, * * * were no longer determinative. The practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character' became the test of venue."

15. D.C.D.C.1948, 79 F.Supp. 871.

16. D.C.N.Y.1948, 81 F.Supp. 637. It should be noted that also inherent in the court's holding · was the factor that, "There is no showing that the cause of action here arose in the State of · New York, which circumstance is frequently taken into account in the determination of the question involved." 81 F.Supp. 640.

17. D.C.N.Y.1952, 12 F.R.D. 508.

18. Id., 12 F.R.D. at page 510.

19. United States v. Scophony Corporation of America, footnote 1 supra, 333 U.S. at page 807, 68 S.Ct. at page 862, 92 L.Ed. 1091.