■ FRED FELD, Doing Business as CRUSHED TOAST Co., Appellant-Respondent, v. HENRY S. LEVY & SONS, INC., Respondent-Appellant.— In an action to recover damages for breach of contract, both parties cross-appeal from an order of the Supreme Court, Kings County, dated August 20, 1973, which denied plaintiff's motion for summary judgment and did not grant defendant's request for summary judgment. Order affirmed, without costs. By the terms of the agreement between the parties, defendant was to sell to plaintiff and plaintiff was to purchase from defendant, at six cents per pound, " all bread crumbs produced by the Seller in its factory " from June 19, 1968 to June 18, 1969. The agreement was automatically renewable for periods of one year, absent six months' notice of cancellation. By mid-May of 1969 defendant ceased producing bread crumbs, asserting that it was no longer economically feasible to

continue manufacturing this item. Plaintiff maintains that the decision to stop production related to plaintiff's refusal to meet defendant's demand for an increase in price per pound to seven cents. Special Term denied plaintiff's motion for summary judgment, stating that an issue of fact to be determined was "whether the parties, as is contended by defendant and as seems to be the literal interpretation of the meaning of the specific words used therein, intended that defendant's obligation under the contract was to be limited to the sale to plaintiff of the bread crumbs which are actually produced by defendant at its Brooklyn factory." Such an intention by the parties, we add, is to be ascertained from all the terms and factors of the agreement (*Wigand* v. *Bachmann-Bechtel Brewing Co.*, 222 N. Y. 272). In the absence of extensive obligations and responsibilities assumed by one party under the agreement, the law in New York is clear that in an output-requirements contract "good faith cessation of business terminates any further obligations thereunder and excuses further performance by the party discontinuing business" (6 Encyclopedia New York Law Contracts, § 442, 1973-1974 Pocket Part, p. 41, citing *inter alia Matter of United Cigar Stores Co. of Amer.*, 8 F. Supp. 243, affd. 72 F. 2d 673; *Du Boff* v. *Matam Corp.*, 272 App. Div. 502; *Gutman* v. *Sal-Vio Masons, Inc.*, 72 Misc 2d 729). In addition, we find as a question of fact to be determined at trial the good faith of defendant in ceasing production. If defendant ceased manufacturing bread crumbs because it was dissatisfied with the contract price, it may not prevail (cf., e.g., *Matter of United Cigar Stores Co. of Amer.*, *supra*; *HML Corp.* v. *General Foods Corp.*, 365 F. 2d 77 [C. C. A. 3d, interpreting N. Y. law]). Hopkins, Acting P. J., Martuscello and Brennan, JJ., concur; Shapiro, J., dissents and votes to modify the order by adding a provision thereto granting summary judgment to defendant dismissing the complaint, with the following memorandum, in which Christ, J., concurs: The contract on which plaintiff sues provides: "The Seller shall sell to the Purchaser and the Purchaser shall purchase from the Seller all bread crumbs produced by the Seller in its factory at 115 Thames Street, Brooklyn, New York, during the period commencing June 19, 1968, and terminating June 18, 1969." Other pertinent provisions of the contract set the price to be paid at six cents per pound, payable within five days after presentation of the seller's bill, and that the contract is to be deemed automatically renewed for successive periods of one year, with cancellation permitted by either party on not less than six months' notice. The defendant seller is a wholesale baker of bread. The bread crumbs covered by this "output" contract were produced by it from stale or imperfect bread which was to be put through two grinders, then toasted in a drum in an oven and then bagged and sold to plaintiff, as provided in the contract. In May, 1969 the defendant ceased producing bread crumbs because the oven used for their production was operating uneconomically. We have set forth the material terms of the contract because they demonstrate that they contain no language from which there can be inferred any agreement by defendant *to continue* to produce bread crumbs to sell to plaintiff. Defendant agreed only — and that is the crux of this case — to sell to plaintiff "all bread crumbs produced by" it. That it continued to do, so long as it produced bread crumbs. It was not obligated to do more. It, therefore, complied fully not only with the plain and literal terms of the agreement but also with their clear and intended purpose. The provision for automatic renewal of the contract from year to year (absent at least six months' notice of termination by either party) implied no obligation by defendant to continue producing bread crumbs to sell to plaintiff during the life of the contract, since it merely provided a method by which

cancellation of the contract could be effected. The contract, until canceled, continued in existence, but it operated only to require defendant *to sell to plaintiff any bread crumbs it would produce* (*Fuller & Co.* v. *Schrank*, 58 App. Div. 222, 225–226; *Matter of United Cigar Stores Co. of Amer.*, 8 F. Supp. 243, 245, affd. 72 F. 2d 673, 674; 1 Corbin, Contracts, § 100, p. 451; 1A Corbin, Contracts, § 158). Professor Corbin states (§ 158, pp. 51–54): "A promise to buy of another all of a commodity that the promisor may need or require or consume in his business is not an illusory promise, even though it leaves a good deal of liberty to the promisor. It contains enough of a limitation to be a real promise and to be a sufficient consideration for a return promise. The same is true of a promise by a producer to sell his entire output or production to another. The one is a total consumption contract, with some freedom left to the consumer. The other is a total production contract, with some freedom left to the producer. At the very least, the promisor binds himself not to sell any of his output to any third person. *He has the limited option between selling to the promisee and not producing at all* " (emphasis supplied). Here there is no " whole writing * * * 'instinct with an obligation,' imperfectly expressed" (Cardozo, J., in *Wood* v. *Duff-Gordon*, 222 N. Y. 88, 91) from which a promise may be inferred by defendant to continue the uneconomical production of bread crumbs, for the parties by their contract expressly stated what their intentions were. Since there is no language in the contract which could possibly sustain a finding that the parties intended that defendant's obligation included a duty to plaintiff *to continue to produce bread crumbs* even when such production became uneconomical, we reject the view of the majority that a fact question exists here which requires a trial. The majority also holds that an additional question of fact required to be determined at a trial is the good faith of defendant in ceasing production, but that issue would become relevant only if the contract contained an obligation by defendant, either express or implied, to continue to produce bread crumbs during the life of the contract. Our statute law (Uniform Commercial Code, § 2–306, subd. [2]) provides that an agreement for exclusive dealings imposes, unless otherwise agreed, an obligation by the seller to use his best efforts to supply the goods and by the buyer to use his best efforts to promote their sale. However, nothing in that statutory provision, or in the agreement here being scrutinized, extends the concept of a seller to use his best efforts to supply goods to the buyer to the point of doing so where it becomes uneconomical for him to produce the goods (see Practice Commentary on the cited statute in McKinney's Cons. Laws of N. Y., Book 62½, Part 1, p. 206, which states that the provisions of this statute are " consistent with prior New York case law "). The commentary view of New York case law finds support in *HML Corp.* v. *General Foods Corp.* (365 F. 2d 77, 81) where the United States Court of Appeals said: " In this case the plaintiff argues that in a requirements contract the buyer impliedly promises to maintain his requirements. Here, as in percentage lease cases, the decisions are not all uniform in the strength assigned to the effort to equalize the agreement on the one hand and the reliance on the parties' bargain on the other. The better view, however, is that generally the buyer in a requirements contract is required merely to exercise good faith in determining his requirements and the seller assumes the risk of all good faith variations in the buyer's requirements even to the extent of a determination to liquidate or discontinue the business. The rule is based on a reliance on the self-interest of the buyer, who ordinarily will seek to have the largest possible requirements. Protection against abuse is afforded by penetrating through any device by which the requirement is siphoned off in some other form to the detriment of the

seller. The requirement of good faith is the means by which this is enforced and self-interest in its undistorted form is maintained as the standard. New York accepts this view." Just as in requirements contracts, where the self-interest of the buyer is the accepted test of good faith compliance, so in output contracts, such as the one we have here, the self-interest of the seller is a valid test of good faith. Here the seller has, as plaintiff agrees, an economic reason for not producing bread crumbs. Therefore, the seller's action in so doing cannot constitute bad faith (cf. *Du Boff* v. *Matam Corp.*, 272 App. Div. 502, 503; *Neofotistos* v. *Harvard Brewing Co.*, 341 Mass. 684; *Atwater & Co.* v. *Terminal Coal Corp.*, 32 F. Supp. 178, 183; *Gutman* v. *Sal-Vio Masons, Inc.*, 72 Misc 2d 729, 732). The cases relied on by plaintiff are clearly distinguishable. *407 East 61st Garage* v. *Savoy Fifth Ave. Corp.* (23 N Y 2d 275) turned on the fact that the agreement there clearly implied that the defendant was obligated to remain in the hotel business arising out of long-term commitments which the contract required the plaintiff to make in order to carry it out. *Wigand* v. *Bachmann-Bechtel Brewing Co.* (222 N. Y. 272) also involved a contract in which the plaintiff was required to make large cash advances to the defendant and to build a costly drying plant, with the plaintiff's costs therefor to be reimbursed from the proceeds of the net gain to be obtained from the operation of the plant. *Wells* v. *Alexandre* (130 N. Y. 642) also turned on the special provisions of the contract to provide coal for the buyers' three steamers and the fact that the steamers continued to operate in the same fashion after they were sold by the buyers, which the court found sufficient to provide a measure for determining the amount of coal the buyers had obligated themselves to buy. Since plaintiff does not contend that defendant is selling bread crumbs to anyone else and concedes that the latter has discontinued the production of bread crumbs, defendant is entitled to summary judgment dismissing plaintiff's complaint.